41142. BALDWIN PROCESSING COMPANY v.
GEORGIA POWER COMPANY.

ARGUED FEBRUARY 2, 1965—DECIDED JUNE 17, 1965—
REHEARING DENIED JULY 20, 1965.

*Frank O. Evans, Hansell, Post, Brandon & Dorsey, Jule W. Felton, Jr.,* for plaintiff in error.

*Miller, Miller & Miller, Wallace Miller, Jr., Troutman, Sams, Schroder & Lockerman, Robert L. Pennington,* contra.

PANNELL, Judge. The present case is a suit for damages to machinery, merchandise and manufacturing materials caused by high waters and brought by a plaintiff whose plant was located on Fishing Creek and upstream from a bridge thereon. The defendant's dam was approximately four miles upstream on the Oconee River from the confluence of that stream with Fishing Creek. There was a verdict for the defendant and the plaintiff brings error to this court based on exceptions to various charges of the court as given and to the failure of the court to give in charge to the jury various charges set out in the grounds of the motion for new trial. There seems to be a basic disagreement between the parties as to the law of this State relating to upper and lower riparian owners in the situation here involved as set forth in headnote 5 which requires further elaboration.

Plaintiff contends it is the law of this State that the owner and operator of a dam must anticipate freshet and flood conditions

and operate its dam so as to have storage capacity to meet such anticipated conditions, and in effect operate the dam as a flood control dam. There are exceptions to charges given and exceptions as to the failure to charge which are dependent upon the validity of this claim.

A proper decision of this case (on some of the exceptions to the charge as given and to the failure to give certain charges without request) depends upon the answer to two questions: (1) What is the duty owed by the owner and operator of a hydro-electric dam to a lower riparian owner? and, (2) has the "law of the case" here, by reason of the overruling of the special demurrers to certain allegations of negligence in the petition, established a different rule solely applicable to the present case? The case of *Brown v. City of Atlanta*, 66 Ga. 71, seems to be the leading case in this State on the subject of the rights and duties of the owner and operator of a dam such as that involved in the present case. In that case, the following charges were approved as against the assignments of error thereon: "3. 'The city had in law a right to construct the waterworks and to dam up and obstruct the water so far as proper and necessary therefor, and it was the plaintiff's right to have his land exempt from any more injuries and negligent overflow of his land by water than would have gone over it by the laws of nature. It is not his right to have it come in the same undisturbed volume as it would have come by nature, or that high water from rains should occur on his land at the same exact time it would have come, but his right would be that such high water should not be more injurious. If there was injury caused to plaintiff's land by unnecessarily or negligently turning water out of the dam which injury would not have happened at all but for such wrongful turning out of water, he could recover; but if the same freshet or a more injurious one would have reached his land anyhow, though at an earlier date, he could not recover. There could be no recovery for injury done, if any, by water running out over the storm channels any more than would be by water passing any ordinary mill dam or factory dam.'

"4. 'The city or its agents would have the right to let off the

water for all proper purposes of the works, if done in such quantities as would keep within and not overflow the adjacent lands below, when the stream was in its ordinary condition—its condition not in the time of floods or freshets, but its condition generally and at ordinary times between freshets, and if the water was let off in quantities no greater than the channel would reasonably contain within the banks at ordinary times, then if it happened that on some occasion or occasions, the channel was already in whole or in part filled or occupied by high water, so that there was not room for both together to flow off harmlessly, and in that manner the plaintiff's lands were overflowed, this would give no cause of action. The court is of opinion that, at such times of high water or partially high water, the city would not have to stop reasonable and proper operation any more than any factory or mill would have to stop the water from its wheels in like times for fear of making or increasing an overflow below. The city would have no right to let off more water or at greater rate than would be safe and prudent to proprietors below, when the channel was open and free to receive it and carry it off, and if no more than that was discharged from the dam, the defendant would not be liable, whether the plaintiff was injured or not. If more was discharged and plaintiff's crops were injured thereby, then he could recover for the injury to the extent of the same.'

"5. 'Again, it would be the duty of the city and its officers and agents having charge of the works, to use ordinary diligence in letting off the water, that is, to take such care as a prudent person would take were the whole risk his own. If you find that the water was let off for causes that were reasonable and proper, and was done with appliances adapted for the purpose, at a rate no greater than a prudent person would, by those causes and using that dam and those appliances, have used and deemed safe to himself had he been also proprietor, as plaintiff was, on the stream below there, the plaintiff would not recover.'

"6. 'That the plaintiff's land was injured would not be sufficient. It must further appear that the negligence caused the injury or injuries; not that it contributed to injury or injuries mainly arising from other causes. The defendant's negligence

must be the chief cause, the preponderating, controlling cause, before it could be the subject of a recovery. If the injury or injuries in question were caused mainly by heavy rainfalls escaping through the water-works' stream or coming down in other streams, pouring in above plaintiff's land, and if these were the main, substantial, preponderating causes of the overflow of plaintiff's land, then he could not recover, even though there was negligence, and even though such negligence added to or increased the injury in some minor and uncertain degree. The negligence complained of must be the main, controlling and preponderating cause, ascertained and distinguished from other causes, in order to be the subject of a recovery.' "

The case of *Brown v. City of Atlanta* was followed generally in *Carroll v. City of Atlanta,* 74 Ga. 386. We think that a reading of these approved charges clearly indicates that there is no duty on the part of the owner and operator of a hydro-electric dam to operate the dam as a flood control mechanism, and this seems to be the rule in most other states. See Iodice v. State, 303 NY 740 (103 NE2d 348); Ireland v. Henrylyn Irr. District, 113 Colo. 555 (160 P2d 364); Smith v. East Bay Municipal Utility Dist. 122 Cal.2d 613 (265 P2d 610); Trout Brook Co. v. Willow River Power Co., 221 Wis. 616 (4) (267 NW 302).

In *Grant v. Kuglar,* 81 Ga. 637 (8 SE 878, 12 ASR 348, 3 LRA 606), the court, speaking through Chief Justice Bleckley said: "The principle upon which we rule this case is, that water having a time relation, as well as a space relation, both of them being fixed by nature, there is no more right in an adjacent proprietor to alter the one than the other. If the time relation of the stream is so altered that the effect of the water upon the lower tract is *injuriously different* from what it was by the natural flow of the stream, then a wrong has been done to the proprietor of the lower tract. We think that the owner of water has no more right artifically to project it forward on another man's land, than he has to push it back upon land in his rear; and if by so doing he causes damage, he ought to answer for it." This statement may seem at first reading, to be contrary to charge No. 3 approved in the *Brown* case, supra. In our opinion, however, the qualifying words "injuriously differ-

ent" modify the first sentences of the above statement so that there is no conflict between it and the principles announced in the *Brown* case. It thus appears that any claim by a lower riparian owner against the owner and operator of a dam above him because of high water must necessarily be based upon the negligent *release* of excessive water from the reservoir behind the dam. Such an action cannot be based upon the negligent storing, unless the negligent storing of water caused or forced the release of excessive water such as a break in the dam itself or release of excessive water to prevent damage to the dam, or a break therein. See *Dover v. Georgia Power Co.*, 46 Ga. App. 630 (168 SE 117).

A statement in 56 Am. Jur. 521, Waters, § 32, that "the general rule is that one who obstructs a natural watercourse or places a structure therein, even in the exercise of a lawful right to do so, must take proper precautions to prevent injury therefrom to others by the action of anticipatable floods" is not contrary to what we have stated above. This statement in Am. Jur. has reference to damage caused by backwaters. See *Goble v. Louisville &c. R. Co.*, 187 Ga. 243 (200 SE 259), cited to support the statement in Am. Jur. For statement relating to release of water from a dam on a water course, see §§ 170, 171 on page 637. The ruling in Bruton v. Carolina Power & Light Co., 217 N.C. 1 (6 SE2d 822), does not require a different ruling.

It is contended by the plaintiff, that if the law of this State does not require the operation of a dam for the purposes of flood control, the law of the case as established by the overruling of special demurrers to allegations of negligence contained in the petition, unexcepted to, does, and that this law of the case should apply. This contention is based upon the overruling of special demurrers to the allegations of negligence contained in paragraph 34 (a) of the petition, as follows: "In maintaining its reservoir at peak capacity when weather and inflow conditions were such as to reasonably indicate an immediate and continuing need for additional controllable storage capacity." The demurrer was on the grounds that "there was no legal obligation on defendant to maintain its reservoir below peak capacity so as to be able to catch or store *unprecedented floods* coming into

its reservoir." (Emphasis by the court). It is obvious that this demurrer is a speaking demurrer as the allegation of negligence makes no mention of unprecedented floods, that is, unforeseeable floods, but refers solely to indicated, and thereby foreseeable, inflow of water into the reservoir. A speaking demurrer, or a demurrer which is so defective as to be ineffective as a demurrer, should be overruled. See *Oxford v. Shuman,* 106 Ga. App. 73 (126 SE2d 522); *Stembridge v. Family Finance Co.,* 49 Ga. App. 353 (2) (175 SE 663). It follows that the overruling of such a demurrer did not establish as the law of the case that the defendant was under such a duty as indicated by the allegation of negligence, but it will be presumed that it was overruled because it was defective as a demurrer. See *Stembridge v. Family Finance Co.,* 49 Ga. App. 353, supra. The result here is the same as if the paragraph were undemurred to insofar as establishing the law of the case is concerned. *Scottish Union &c. Ins. Co. v. Peoples Credit Clothing Co.,* 61 Ga. App. 316, 318 (6 SE2d 178). However, irrespective of whether the law of this State would allow a recovery for the negligent storing of water, or whether the law of the case to that effect has been settled by the overruling of demurrers to the allegations of negligence, there was no evidence to sustain the contentions of the plaintiff (1) that the defendant should have anticipated a flood and increased the storage capacity of the reservoir so as to control it; and (2) that the negligent storing of the water created an emergency necessitating the release of excessive water from the reservoir. The evidence disclosed that the weather forecast available to defendant indicated something over one inch of rain, whereas approximately four inches actually fell, and that the rain in excess of the forecast caused the flood. Under these circumstances, the exceptions to the charge of the court instructing the jury that the defendant was under no duty to operate the dam as a flood control dam and had the right to maintain the reservoir at any level and instructing the jury to disregard any allegations or evidence to the contrary (grounds 5, 9, 10 and 11 of the motion for new trial), are without merit, as a finding based on such alleged negligence was not authorized by the evidence.

102

*Judgment affirmed. Nichols, P. J., concurs. Eberhardt, J., concurs in judgment.*