## A08A2291. LEE v. GEORGIA POWER COMPANY.

(675 SE2d 465)

MIKELL, Judge.

Troy Lee, individually and d/b/a "Lee Tree Service," appeals the judgment entered on the jury's verdict and the order denying his motion for judgment notwithstanding the verdict ("j.n.o.v."), or, in the alternative, for a new trial in his negligence action against Georgia Power Company ("GPC"). In his complaint, Lee contended that GPC flooded Lee's property on September 17, 2004, by suddenly releasing excessive amounts of water through the spillway gates ("flood gates") of Mathis Dam, a hydroelectric dam also known as Lake Rabun Dam ("the Dam"), during a storm following Hurricane Ivan. The Dam crossed the Tallulah River upstream of Lee's property. Lee demanded compensatory damages of at least $282,330, attorney fees, and punitive damages. At trial, Lee contended, inter alia, that GPC was negligent by storing excessive amounts of water in the Lake Rabun reservoir above the Dam and by failing to warn downstream residents before opening the flood gates. On appeal, Lee argues that the trial court erred in failing to excuse a juror for cause, in denying his motion for directed verdict regarding GPC's duty to warn, in granting GPC's motion for directed verdict on the issue of attorney fees, in refusing to give many of his requests to charge, and finally, in sustaining an objection during his closing argument. Discerning no error, we affirm.

Although Lee does not challenge the adequacy of the evidence to support the verdict, we set out for clarity the evidence relevant to his enumerated errors. "[T]he standard for granting a motion for j.n.o.v. is the same as that for a motion for a directed verdict, and this Court reviews the denial of either motion under the 'any evidence' standard" of review.[1] So viewed, the evidence shows that heavy rains from the remnants of Hurricane Ivan caused the levels of Lakes Burton, Rabun, and Seed to rise very rapidly beginning on September 16, 2004. GPC dispatched a maintenance crew to the Dam at Lake Rabun during the storm to monitor lake levels. As the water rose above "full pond," or the height of the flood gates, the crew opened the gates in sequence. Because the water kept rising, GPC eventually opened all 16 gates.

Lee's property is located in Lakemont on Shady Lane Road, bordering the banks of the Tallulah River. The Road also leads to the Dam. After the flood gates were opened, the Tallulah River rose

---

[1] (Citation and punctuation omitted.) *Lowery v. Roper*, 293 Ga. App. 243, 244, n. 1 (666 SE2d 710) (2008). Accord *Columbia County v. Doolittle*, 270 Ga. 490, 492 (1) (512 SE2d 236) (1999).

rapidly, causing a flood downstream. A witness who owned a business adjacent to the Tallulah River testified that the water rose from ankle-deep to chest high in about four to six minutes around 9:30 a.m. on September 17. Lee testified that the water came raging through his shop located on the property, rising to six feet deep inside. He sustained damage to his personal property, including machinery utilized in his tree service business.

GPC did not warn downstream property owners before opening the flood gates. Bruce Hampton, a former GPC employee who worked at the Tallulah power plant on the dates in question, testified that he was instructed not to call people downstream and not to inform the public if someone called to inquire. On cross-examination, Hampton explained that he had discussed with the operator on duty at the control center the need to call the National Weather Service once the second gate was opened. Joel Galt, a Southern Company supervisor who provides engineering and regulatory services for GPC's hydroelectric plants, testified that GPC followed the correct protocol. Galt explained that GPC's Emergency Action Plan, approved by the Federal Energy Regulatory Commission ("FERC"), does not require direct notification except in the event of a catastrophic failure of the dam, in order to evacuate affected persons. Galt testified that the dam did not fail; rather, the flood gates were opened to permit the proper flow of water through the reservoir. According to Galt, GPC's opening of the second flood gate at the Dam triggered a nonfailure emergency condition, pursuant to which GPC notified the National Weather Service, which, in turn, issued flash flood warnings. Galt testified that opening the flood gates lessened the impact of the flood.

1. In his first enumeration of error, Lee asserts that the trial court erred by refusing to strike for cause a prospective juror who was a retired GPC employee. "[T]rial courts have broad discretion to evaluate and rule upon a potential juror's impartiality, . . . and a trial court may only be reversed upon a finding of manifest abuse of that discretion."[2] In the case at bar, we cannot say that the trial court abused its discretion in refusing to excuse the prospective juror for cause because the record does not contain a transcript of the voir dire proceedings.

> Absent a transcript, this court can only presume that this portion of the trial was conducted in a regular and proper manner. When an appellant seeks to prove error in the trial

---

[2] (Citations and punctuation omitted.) *Kim v. Walls*, 275 Ga. 177, 178 (563 SE2d 847) (2002).

proceedings, the burden is on him to produce a transcript of the allegedly erroneous matter.[3]

Lee has failed to sustain his burden of proving error affirmatively by the record. Accordingly, this enumeration of error fails.

2. In his second enumerated error, Lee argues that the trial court erred in granting GPC's motion for directed verdict on the issue of attorney fees under OCGA § 13-6-11 because there was evidence of bad faith. Pretermitting whether any evidence of bad faith existed, however, reversal is not required, because Lee cannot show that he was harmed by the court's decision not to submit the issue to the jury. An award of attorney fees and expenses of litigation under OCGA § 13-6-11 is ancillary, and a party may recover them only if the jury finds in his favor on another claim.[4] Where, as here, the plaintiff suffers a defense verdict, he is not entitled to recover attorney fees pursuant to OCGA § 13-6-11.[5] Accordingly, Lee can show no harm, and no basis for reversal, arising from the grant of a directed verdict to GPC on the issue of attorney fees.[6]

3. In his ninth enumerated error, Lee asserts that the trial court erred in refusing to give his requests to charge nos. 6, 7, 8, 9, and 10, which were derived from *Baldwin Processing Co. v. Ga. Power Co.*[7] This enumerated error fails, because contrary to Lee's contention, the trial court charged extensively from the *Baldwin Processing Co.* case, and in fact gave Lee's request to charge no. 7, as well as a substantial portion of charge no. 6. The court charged the jury as follows:

> It is the duty of the owner/operator of a dam to use ordinary diligence in releasing water, that is, to take such care as a prudent person would use. If you find that water was released for causes that were reasonable and proper and was done at a rate no greater than a prudent person would have used, the plaintiff cannot recover.
>
> The owner/operator of a dam has a right to release water periodically from the reservoir provided that the owner/

---

[3] (Punctuation omitted.) *Hines v. State*, 208 Ga. App. 470 (1) (431 SE2d 137) (1993), citing *Reedman v. State*, 193 Ga. App. 688, 689 (2) (388 SE2d 763) (1989).

[4] *Steele v. Russell*, 262 Ga. 651-652 (2) (424 SE2d 272) (1993).

[5] *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 529 (3) (543 SE2d 32) (2001); *Gardner v. Kinney*, 230 Ga. App. 771, 772-773 (498 SE2d 312) (1998) (whole court).

[6] See *Ga. Power Co. v. Bishop*, 162 Ga. App. 122, 126 (6) (290 SE2d 328) (1982) ("The burden is on the party seeking reversal to show not only error, but also injury arising from the alleged error") (citation omitted).

[7] 112 Ga. App. 92, 100 (143 SE2d 761) (1965).

operator uses ordinary diligence in releasing the water that is, the care such as would be used by a prudent person and providing that the release of the water did no more harm than nature's floods would do had there been no such reservoir and further providing that the storing of the water in the reservoir does not create an emergency causing, or necessitating, the dumping of water thereby causing injury to the landowner below.

Any claim by a lower riparian landowner against the owner/operator of a dam above him because of high water must be based upon the negligent release of excessive water from the reservoir behind the dam and cannot be based upon the negligent storing of the water, unless the negligent storing caused or forced the release of excessive water.[8]

The court's charge amply covered the holding in *Baldwin Processing Co.* "Where the charge given is an accurate statement of law and substantially covers the principles in the requested charge, failure to give the instructions in the exact language requested is not error."[9] In addition, Lee has not shown how the court's failure to give the remainder of his requests to charge on this issue harmed him.

4. In his eighth enumerated error, Lee argues that the trial court erred in refusing to give his requests to charge nos. 2 and 3, which were the pattern jury instructions on ordinary negligence and the law applicable to foreseeability and causation in a chain reaction situation.[10] Contrary to Lee's assertion, the record shows that the court gave the pattern jury charge on ordinary negligence. The court also gave the pattern jury charge on proximate cause,[11] which was Lee's request to charge no. 4. Lee offers no argument as to how the court's failure to give the "chain reaction" charge harmed him. In any event, the principles of foreseeability and causation were fairly covered by the charges on proximate cause and the duties of a dam owner and operator.[12] It follows that the trial court did not err in declining to give Lee's request to charge no. 3.

---

[8] See id.

[9] (Citation omitted.) *Fowler Properties v. Dowland*, 282 Ga. 76, 81 (5) (646 SE2d 197) (2007).

[10] See Council of Superior Court Judges, Suggested Pattern Jury Instructions (5th ed. 2007), Vol. I: Civil Cases, §§ 60.010 (ordinary negligence), 60.202 (chain reaction situation).

[11] Id. at § 60.200. For an alternative version of a jury instruction on proximate cause, see C. Mikell, Jury Instructions and Proximate Cause: An Uncertain Trumpet in Georgia, 27 Ga. St. Bar J. 60 (1990).

[12] See *Fowler Properties*, supra; *Payne v. Whiting*, 140 Ga. App. 390, 392 (4) (231 SE2d 796) (1976).

YALE LAW LIBRARY

5. Lee's third enumeration of error sets out multiple claims of interrelated errors. In keeping with our "statutory mandates . . . [to] construe the APA [Appellate Practice Act] liberally so that [all] points raised in an appeal are considered,"[13] we will address these errors as best we perceive them.

Lee argues that the trial court erred in charging the jury that GPC "ha[d] the right to drain and flush the Tallulah River over, across and through certain property in Rabun County," in refusing to give Lee's request to charge on this issue, in denying his motion for directed verdict and in directing a verdict for GPC regarding this issue.

We address the directed verdict first. "On a motion for directed verdict, we construe the evidence in favor of the party opposing the motion and will affirm if there is evidence to support the trial court's decision."[14] In this case, there was evidence to support the trial court's decision. Michael Cummings, an attorney who testified as an expert in real estate, performed a title examination and determined that Lee's property "was subject to a right in [GPC] to control the flow of the Tallulah River by draining, flushing, or otherwise changing the same over, through, by and across" the property. Lee stipulated that the original grantor of the water rights, McCurry, was Lee's predecessor in title, and the evidence established that McCurry granted the water rights to GPC's predecessor in title pursuant to a deed executed in 1921.

Lee contends that the trial court stated that the jury would not hear about this issue, but the transcript does not support his assertion. The trial court explained that the issue was one of law, not fact, and stated, "I will be glad to tell the jury that and tell them that's not part of their deliberations." When Lee pressed the issue, the judge responded that he was considering it in conjunction with *Baldwin Processing Co.*[15] and would reserve further ruling until the following day.

On the next day, Lee asked the court to instruct the jury that it should not consider any rights that GPC might have had under the 1921 deed. The trial court responded, "I am prepared to direct a verdict that holds that the defendant had the right to drain and flush the Tallulah River over, across and through the property described in the deed. . . . I don't think that there are any topographical limitations on that." As Lee stipulated to the 1921 deed that granted GPC the right to drain and flush the Tallulah River, he has no cause to

---

[13] *Felix v. State*, 271 Ga. 534, 538 (523 SE2d 1) (1999), citing OCGA § 5-6-48 (f).

[14] (Footnote omitted.) *Columbia County*, supra.

[15] Supra.

complain of the court's ruling. Moreover, he offers no reason why the trial court erred in directing the verdict. As the trial court correctly noted, the interpretation of a deed is a question of law for the court to decide.[16]

Lee further contends that the trial court erred in refusing to give his request to charge no. 28, as follows:

> With respect to the contention by GPC that it holds "the right to control the flow of [the] Tallulah River" upon Plaintiff's property, the Court charges you that you should consider whether Defendant held such a right, and, if it did, whether Defendant's actions constituted an excessive or injurious use of such a right.[17]

"If *any portion* of a requested charge is inapt, incorrect, misleading, confusing, argumentative, not precisely adjusted or tailored, or not reasonably raised or authorized by the evidence, denial of the charge request is proper."[18] In the case at bar, the requested charge was not precisely tailored to the evidence because it omitted GPC's right to "drain and flush" the Tallulah River and erroneously stated that whether GPC had such a right was a question of fact. In addition, we note that the court's charge omitted the fact that GPC's right extended over Lee's property, so a portion of the charge actually benefitted Lee. With respect to the omission of the "excessive or injurious" language, we observe that the trial court correctly charged the jury on the principles of negligence, causation, and the duties of the owner/operator of a dam, thereby substantially covering the principle in the requested charge. It follows that the trial court did not err in refusing to give Lee's request to charge no. 28.[19]

6. In his fourth enumeration of error, Lee argues that the trial court erred in denying his motion for a directed verdict with respect to GPC's duty to warn Lee and other property owners downstream from the Dam before opening all the flood gates. In denying the motion, the trial court held that whether GPC had a duty under Georgia tort law, as opposed to GPC's emergency action plan, was a matter for the jury. Lee has not cited a single appellate case in

---

[16] *Second Refuge Church &c. v. Lollar*, 282 Ga. 721, 724-725 (2) (653 SE2d 462) (2007) (absent an ambiguity in the deed, there is no question of fact to be resolved by the factfinder).

[17] See 1 Daniel F. Hinkel, Pindar's Ga. Real Estate Law and Procedure § 8-41, pp. 625-626 (6th ed. 2004) ("Persons exercising flowage easements must observe all express limitations on the grant and may be liable in damages for excessive or injurious usage") (footnotes omitted).

[18] (Citations omitted; emphasis in original.) *Morris v. State Farm &c. Ins. Co.*, 203 Ga. App. 839 (1) (418 SE2d 119) (1992). Accord *Stokes v. State*, 281 Ga. 875, 877-878 (3) (644 SE2d 116) (2007).

[19] *Fowler Properties*, supra; *Payne*, supra.

Georgia that requires a dam owner or operator, as a matter of law, to notify downstream residents when opening flood gates. In addition, the evidence was in conflict on this issue and did not demand a verdict for Lee.[20] Accordingly, the trial court did not err in denying his motion for a directed verdict on this issue.

Lee asserts that the trial court ruled that GPC had a duty, as a matter of law, to provide a warning to the public. Lee misrepresents the court's ruling. After denying Lee's motion for a directed verdict, the court specifically stated that GPC's duty to warn was "a charge issue," and the court recited the charge it intended to give.[21] In colloquy with GPC's counsel, who objected to any charge on the issue, the trial court indicated that it found there "is a duty under Georgia law" and that the court intended to charge the jury on the duty as the judge perceived it. Lee's counsel replied, "Yes, sir." It is clear from the transcript that the trial court did not intend to direct a verdict.

7. In his fifth enumeration of error, Lee complains of the trial court's jury instruction on the duty to warn:

[I]f you should find that the Defendant had control over the instrumentalities having damaging potentialities, the means of knowledge on existing conditions and the likely future developments, and the capacity to make assessments on what would be done and the consequences thereof, then you may find that the Defendant had a duty to give such warning to plaintiff, as would an ordinarily prudent person under the circumstances.

The charge was derived in pertinent part from *Ford Motor Co. v. Dallas Power & Light Co.*,[22] a case decided under Texas law in which the court found a duty to warn under similar circumstances.[23] Lee objects to the court's use of the "may find" language. Similarly, Lee assigns error to the court's failure to give his request to charge no. 18, which omitted that language.[24] Again, Lee has not cited Georgia authority to support his assertion that GPC had such a duty to warn as a matter of law. Lee cites cases decided under Texas law, and the

---

[20] See OCGA § 9-11-50 (a).

[21] See Division 7, infra.

[22] 499 F2d 400 (5th Cir. 1974).

[23] Id. at 413 (Specifically, the court held: "With this operational control over the instrumentality having damaging potentialities, the means of knowledge on existing conditions and likely future developments, and the capacity to make assessments on what would be done and the consequences thereof, DP&L had a duty to give such warning to [Big "D" Auction Co., which stored appellant's vehicles] as would an ordinarily prudent person").

[24] Lee excepted to the trial court's failure to give this charge, among others.

trial court took them into account when crafting its own charge.[25] The trial court did not err in refusing to give this requested charge.

8. In his sixth enumerated error, Lee contends that the trial court erred in refusing to give his requests to charge nos. 17 and 19. These requests merely repeated the statement in Lee's request to charge no. 18 that GPC had a duty to warn downstream property owners before opening the floodgates. This enumerated error fails for the reasons stated in Divisions 6 and 7, supra.

9. In his seventh enumerated error, Lee argues that the trial court erred in sustaining GPC's objection during his closing argument. The record shows that GPC objected when Lee argued, facetiously, that he made a mistake not going boating or fishing that morning because if he had, he would have been entitled to a warning. Lee was referring to testimony given by a witness who authored a certain FERC regulation concerning the requirement of barriers, lights, signs or other public safety devices around dams for the safety of recreational users of "project lands and waters." The trial court had granted GPC a directed verdict on the issue of whether GPC violated this requirement because the witness testified that it applied only to recreational users, not downstream property owners. When Lee made reference to it during closing argument, GPC objected on the basis that the trial court had directed a verdict on the issue. Thereafter, Lee stated that he would not talk about the sirens, only the warning. The court permitted Lee to resume, and Lee promptly argued that "he would have been entitled to a siren warning." GPC objected, and the court explained to the jury the basis of the directed verdict. The trial court directed Lee to argue the issues that were before the jury.

Lee contends that the court's ruling was error because his comments were within the permissible scope of closing argument.

> While counsel should not be permitted in argument to state facts which are not in evidence, it is permissible to draw inferences from the evidence, and the fact that the deductions may be illogical, unreasonable, or even absurd is a matter which may be addressed by opposing counsel in his or her closing argument.[26]

---

[25] See *Ford Motor Co.*, supra; see also *American Cyanamid Co. v. Sparto*, 267 F2d 425, 429 (5th Cir. 1959) ("Since then, the appellant's right was not an unlimited one, it follows that if the exercising of that right created a risk of injury to the appellees which might have been averted by a warning, there was a duty to warn and the failure so to do would constitute actionable negligence") (citations omitted).

[26] (Citation and punctuation omitted.) *Cummings v. State*, 261 Ga. App. 281, 283 (4) (582 SE2d 231) (2003).

In this case, the facts to which Lee referred during his argument essentially were no longer in evidence because the judge had removed the issue from the jury's consideration. And although "[c]ounsel is permitted wide latitude in closing argument, . . . any limitation of argument is a matter for the [trial] court's discretion."[27] Under the circumstances presented here, we cannot say that the trial court abused its discretion in curtailing Lee's argument.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 16, 2009 —
RECONSIDERATION DENIED MARCH 19, 2009 ▆▆▆▆▆

*Abraham A. Sharony*, for appellant.
*Blasingame, Burch, Garrard & Bryant, M. Steven Heath*, for appellee.

---

[27] (Citation omitted.) *Brown v. State*, 268 Ga. 354, 360 (8) (490 SE2d 75) (1997).