**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**May 20, 2013**

# In the Court of Appeals of Georgia

A13A0027. PELHAM v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA.

BARNES, Presiding Judge.

Jerome Pelham brought this action against the Board of Regents of the University System of Georgia ("Board of Regents") seeking damages for personal injuries he suffered during football practice at Georgia Southern University ("Georgia Southern") when the head coach allegedly ordered Pelham and the other players to fight each other during spring practice. The trial court dismissed Pelham's complaint, concluding that his claims against the Board of Regents fell under the assault and battery exception to the Georgia Tort Claims Act, OCGA § 50-21-20 et seq. ("GTCA"), and thus were barred by the doctrine of sovereign immunity. For the reasons that follow, we affirm the trial court's order of dismissal.

We review de novo a trial court's grant of a motion to dismiss on sovereign immunity grounds, bearing in mind that "[t]he party seeking to benefit from the

waiver of sovereign immunity has the burden of proof to establish waiver." *Bonner v. Peterson*, 301 Ga. App. 443 (687 SE2d 676) (2009). The allegations of Pelham's complaint, which the trial court accepted as true in ruling on the motion to dismiss,[1] are as follows.

During the 2007-2008 academic year, Pelham was a student enrolled at Georgia Southern and a member of the varsity football team. During his recruitment to play football at the school, Pelham had been informed that he would be eligible to earn a scholarship through his participation and membership on the football team.

In late March 2008, Pelham and the rest of the Georgia Southern football team were participating in spring practice in full pads. The head football coach, Christopher Hatcher, instructed the players to line up in two single file lines facing each other. Coach Hatcher then paired specific players across from one another, often

---

[1] Because a motion to dismiss on sovereign immunity grounds is based upon the trial court's lack of subject matter jurisdiction, the trial court is entitled to make factual findings necessary to resolve the jurisdictional issue. See OCGA § 9-11-12 (b) (1); *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 676 (1) (c) (570 SE2d 1) (2002). When the trial court determines the jurisdictional issue based upon conflicting facts, the court's determination is reviewed on appeal under the any evidence rule. *Bonner*, 301 Ga. App. at 443. In the present case, however, the trial court did not make any factual findings but instead found that even if Pelham's factual allegations were true, his claims were barred by sovereign immunity.

pairing mid-level or smaller players against larger first-string players. After lining up the players, Coach Hatcher announced that he wanted to see "who was tough enough to be on the team" and earn a scholarship. Coach Hatcher informed the players that he planned to walk down the line and, upon the blowing of his whistle, the pair of players in front of him were to fight each other. He emphasized that their membership on the team and eligibility for scholarships were dependent on his scrutiny of their performance in the fight.

Coach Hatcher then moved down the line and closely observed each pair of players fight each other upon his blowing of the whistle. There were no rules to the fights, and players were not restricted to contact allowed by the rules of football. Players were permitted to throw punches to the head and body of the other player with whom they were paired; hold and pull the face mask of the other player; grab the jersey of the other player; throw the other player to the ground by pulling his face mask; and trip or "hip toss" the other player. Coach Hatcher told his subordinate coaches not to interfere in the fights and informed the players that they were allowed to stop fighting only when he blew his whistle and moved on to the next pairing.

Coach Hatcher approached Pelham and the player with whom he was paired, blew his whistle, and instructed them to start fighting. Concerned that they would be

3

cut from the team or lose their opportunity for a scholarship if they did not participate, the two players physically engaged each other. Pelham, who played the position of defensive end, placed his hands on the shoulders of the other player in the manner typical of a defensive lineman attempting to control an offensive lineman during a game situation. However, the other player grabbed Pelham by the face mask, jerked Pelham's head from side to side, grabbed Pelham by the jersey, and twisted Pelham to the ground over the player's leg by tripping him, all of which would have constituted penalties under the rules of football. Pelham fell awkwardly with the other player landing on top of him and his outstretched right leg, resulting in severe, permanent injuries to his right knee and leg.

Pelham subsequently commenced this action against the Board of Regents seeking recovery for his personal injuries sustained at the football practice.[2] He asserted claims for negligence and negligence per se against the Board under a theory of respondeat superior, contending that Coach Hatcher's instruction for the players to fight each other at the football practice violated Georgia's anti-hazing law codified

---

[2] Pelham also asserted negligence and punitive damages claims against Coach Hatcher and the Athletic Director of Georgia Southern in their individual capacities, but those claims were later dismissed without prejudice in a consent order.

4

at OCGA § 16-5-61. Pelham further asserted that the Board of Regents was liable for the negligent training and supervision of Coach Hatcher and other coaching staff.

The Board of Regents answered and filed a motion to dismiss the complaint based on the doctrine of sovereign immunity, contending that Pelham's claims were barred by the assault and battery exception to the waiver of sovereign immunity contained in the GTCA. The trial court granted the motion to dismiss, finding that the act that caused Pelham's underlying loss constituted an assault and battery. Pelham now appeals from trial court's order of dismissal.

1. Pelham contends that the trial court erred in dismissing his negligence and negligence per se claims because they were predicated on Georgia's anti-hazing law, OCGA § 16-5-61, and thus were not barred by sovereign immunity. We disagree because OCGA § 16-5-61 does not create a statutory waiver of the Board of Regents' sovereign immunity.

Under the Georgia Constitution, sovereign immunity from suit extends to all state departments and agencies unless properly waived through an act passed by the General Assembly. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). "The Board of Regents is the state agency vested with the governance, control and management of the University System of Georgia," and, therefore, is entitled to sovereign immunity

5

from suit unless the legislature has waived its immunity. (Punctuation and footnote omitted.) *Bd. of Regents of Univ. Sys. of Ga. v. Ruff*, 315 Ga. App. 452, 456 (2) (726 SE2d 451) (2012).

Sovereign immunity is waived by a legislative act only if the statutory language "specifically provides that sovereign immunity is waived and the extent of such waiver." *Gilbert v. Richardson*, 264 Ga. 744, 748 (3) (452 SE2d 476) (1994), quoting Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e). See *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 186 (674 SE2d 894) (2009). "In this regard, implied waivers of governmental immunity should not be favored." (Citation and punctuation omitted.) *Currid*, 285 Ga. at 186. See *City of Atlanta v. Gilmere*, 252 Ga. 406, 409 (314 SE2d 204) (1984).

Georgia's anti-hazing law, OCGA § 16-5-61, provides:

(a) As used in this Code section, the term:

(1) "Haze" means to subject a student to an activity which endangers or is likely to endanger the physical health of a student, regardless of a student's willingness to participate in such activity.

(2) "School" means any school, college, or university in this state.

6

(3) "School organization" means any club, society, fraternity, sorority, or a group living together which has students as its principal members.

(4) "Student" means any person enrolled in a school in this state.

(b) It shall be unlawful for any person to haze any student in connection with or as a condition or precondition of gaining acceptance, membership, office, or other status in a school organization.

(c) Any person who violates this Code section shall be guilty of a misdemeanor of a high and aggravated nature.

Plainly, OCGA § 16-5-61, a criminal statute, does not evince a clear legislative intent to allow civil damages suits to be brought against the state for hazing violations. "Nowhere in [OCGA § 16-5-61] has the Legislature specifically provided that sovereign immunity has been waived and the extent of such waiver," and, therefore, "no waiver can be shown." (Punctuation and footnote omitted.) *Ga. Dept. of Corrections v. James*, 312 Ga. App. 190, 194 (1) (718 SE2d 55) (2011). Hence, Pelham's only potential avenue of recovery was through the GTCA, which provides "the exclusive remedy for any tort committed by a state officer or employee." OCGA § 50-21-25 (a). Compare *Fulton County v. Colon*, 316 Ga. App. 883, 884-885 (1) (730 SE2d 599) (2012) (private right of action provided by Georgia's whistleblower

statute, OCGA § 45-1-4, constitutes a waiver of the state's sovereign immunity independent of the waiver in the GTCA).

2. Pelham further maintains that the trial court erred in concluding that he could not proceed with his negligence and negligence per se claims under the waiver of sovereign immunity contained in the GTCA because the assault and battery exception applied. Again, we disagree.

The GTCA provides for a waiver of the state's sovereign immunity for torts committed by state officers and employees acting within the scope of their official duties or employment, "provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article." OCGA § 50-21-23 (a). In OCGA § 50-21-24, the General Assembly has set forth thirteen exceptions to the waiver of sovereign immunity contained in the GTCA. If a tort claim falls within the scope of any of these exceptions, it is barred by sovereign immunity. See OCGA § 50-21-24 ("The state shall have no liability for losses resulting from [any of the enumeration exceptions.]").

Included among the exceptions to the state's waiver of sovereign immunity is the "assault and battery" exception, which provides that "[t]he state shall have no liability for losses resulting from . . . [a]ssault [and] battery." OCGA § 50-21-24 (7).

8

"This exception has been interpreted to mean that where a loss results from assault or battery, there is no waiver of sovereign immunity, even though a private individual or entity would be liable under like circumstances." (Punctuation and footnote omitted.) *Chin Pak v. Ga. Dept. of Behavioral Health & Dev. Disabilities*, 317 Ga. App. 486, 487 (731 SE2d 384) (2012).

Pelham asserts that his negligence and negligence per se claims did not fall within the assault and battery exception to the GTCA because the claims were predicated solely on Coach Hatcher's act of "hazing" him, which Pelham claims occurred when Coach Hatcher required him to participate in a non-football activity that was highly dangerous or risk being excluded from scholarship consideration and membership on the team. As explained by Pelham, "the tortious act of hazing occurred well prior to the orchestrated fight the moment Coach Hatcher conditioned [Pelham's] membership, standing and participation in the [Georgia Southern] football team upon participating in an activity defined as hazing by Georgia law." According to Pelham, the focus of the sovereign immunity analysis should be on Coach Hatcher's conduct, which was not itself an assault and battery, rather than on the fact that the end result of that conduct was the commission of an assault and battery by another football player.

This Court has consistently held that in determining whether the exception for assault and battery applies, the focus is not on the government action taken or the duty allegedly breached by the government, but on the act causing the underlying loss, and it is not necessary that such act have been committed by a state officer or employee. The Supreme Court of Georgia has affirmed this reasoning[.]

(Punctuation and footnote omitted.) *Chin Pak*, 317 Ga. App. at 487 & n. 4 (listing cases). See *Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*, 273 Ga. 715, 717 (3) (545 SE2d 875) (2001) ("Unlike other subsections within OCGA § 50-21-24, subsection (7) is not limited in application to acts taken by a State officer or employee but covers all losses resulting from the torts enumerated therein. The focus, therefore, is not on the duty allegedly breached by the State but on the act causing the underlying loss regardless of who committed the act.") (citation omitted). Accordingly, if a plaintiff's injury was caused by an assault and battery committed by a third party, the state is immune from suit even if the assault and battery was facilitated by or resulted from the prior negligence performance of a state officer or employee. See *Youngblood*, 273 Ga. at 717 (3) (community service board that negligently placed plaintiff's mentally disabled daughter in residential home where

she was beaten by her caretakers was immune from liability under the assault and battery exception).

Applying these principles to the present case, we conclude that the assault and battery exception barred the claims asserted by Pelham. The complaint reveals that the loss suffered by Pelham was the severe injury to his leg resulting from being grabbed, tripped, and violently thrown to the ground with the other play landing on top of his outstretched leg. Because the act causing the underlying loss in this case – the other player physically attacking Pelham – constituted an assault and battery, the exception found in OCGA § 50-21-24 (7) applied. See *Youngblood*, 273 Ga. at

11

717 (3).[3] The trial court thus committed no error in dismissing Pelham's negligence and negligence per se claims on sovereign immunity grounds.

3. Lastly, Pelham argues that the assault and battery exception to the GTCA had no bearing upon or application to his separate claims for the Board of Regent's negligent failure to properly train the coaching staff on university policies and procedures and state laws related to hazing, and for the Board's negligent failure to properly supervise the coaching staff to prevent hazing during football practices. We are unpersuaded.

> In determining whether the [assault and battery] exception applies, our focus is not on which particular state law causes of action a plaintiff has set forth in her complaint, but rather on the underlying

---

[3] See also *Chin Pak*, 317 Ga. App. at 488-489 (Georgia Department of Behavioral Health & Development Disabilities entitled to sovereign immunity where it discharged patient from treatment facility over mother's objection and patient thereafter killed mother); *Southerland v. Ga. Dept. of Corrections*, 293 Ga. App. 56, 58-59 (1) (666 SE2d 383) (2008) (Georgia Department of Corrections entitled to sovereign immunity where inmate was killed by fellow inmate); *Davis v. Standifer*, 275 Ga. App. 769, 773-775 (1) (b) (621 SE2d 852) (2005) (state entities entitled to sovereign immunity where victim claimed state patrol officer sexually assaulted her during traffic stop); *Ga. Military College v. Santamorena*, 237 Ga. App. 58, 59-61 (1) (a) (514 SE2d 82) (1999) (Georgia Military College protected by sovereign immunity where its alleged negligence led to student being raped by other student in barracks); *Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70, 71-73 (1) (456 SE2d 642) (1995) (Department of Human Resources entitled to sovereign immunity where it placed juvenile in contract home and juvenile thereafter shot operator of the home).

conduct that allegedly caused the plaintiff's loss. Any alleged losses arising out of conduct that would constitute the common law tort of assault or battery upon the plaintiff's person fall within the exception, irrespective of what particular state law causes of action the plaintiff brings in order to recover for those losses[.]

(Citations and footnote omitted.) *Davis*, 275 Ga. App. at 774 (1) (b). Because, as previously discussed, Pelham's underlying injury was the result of the assault and battery committed upon him by another football player, the assault and battery exception applied so as to bar all of his claims, including his claims for negligent training and supervision. See id. at 775 (1) (b) (plaintiff could not circumvent assault and battery exception by alleging that the attack of the victim resulted from the state being "negligent or deliberately indifferent in their hiring, instruction, supervision, control, and discipline" of its officers or employees).

In sum, we conclude that the trial court did not err in dismissing under the GTCA all of Pelham's claims asserted against the Board of Regents. In reaching this conclusion, we certainly do not condone the alleged misconduct of the Georgia Southern coaching staff in this case; in fact, we urge the state to independently investigate the matter and commence any administrative disciplinary proceedings that

13

might be warranted as the result of such an investigation. Nevertheless, while we sympathize with Pelham,

> sovereign immunity is a harsh doctrine, not an equitable one. Indeed, it is just the opposite of equity – it is the state declaring that it cannot be sued even where it would otherwise be liable. Nevertheless, it is a constitutionally recognized doctrine, and the constitution expressly provides that immunity for tort claims can be waived only by a legislative act specifically providing for such waiver and setting forth the extent thereof.

(Punctuation and footnote omitted). *Chin Pak*, 317 Ga. App. at 489. The trial court's order of dismissal, therefore, must be affirmed.

*Judgment affirmed. Miller and Ray, JJ., concur.*