**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 12, 2013**

# In the Court of Appeals of Georgia

A13A1017. CARROLL v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA d/b/a THE UNIVERSITY OF GEORGIA.

MILLER, Judge.

This appeal arises from an action that Barbara Ann Carroll filed against the Board of Regents of the University System of Georgia (the "Board") for breach of contract, promissory estoppel, unjust enrichment, and attorney fees based upon the Board's failure to compensate her for unused annual leave upon her retirement. The trial court granted the Board's motion to dismiss the unjust enrichment and promissory estoppel claims, concluding that they were barred by sovereign immunity. The trial court subsequently granted the Board's motion for summary judgment on the breach of contract claim, concluding that under the clear and unambiguous terms

of a settlement agreement that Carroll entered into with the Board providing for her early retirement, Carroll was not entitled to compensation for the unused annual leave and Carroll could not establish that the parties modified their agreement. Carroll argues on appeal that the settlement agreement is ambiguous regarding her right to compensation for unused annual leave and genuine issues of material fact exist as to whether the parties modified the agreement. She also challenges the dismissal of her unjust enrichment and promissory estoppel claims. We discern no error and affirm.

"Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We apply a de novo standard of appellate review and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Footnote and punctuation omitted.) *Community Marketplace Properties, LLC v. SunTrust Bank*, 303 Ga. App. 403, 404 (693 SE2d 602) (2010). So viewed, the record shows that Carroll served as a professor in the Marketing Department of the Terry College of Business ("TCB") at the University of Georgia ("UGA") from 1986 until her retirement on September 1, 2010. In August 2007, Carroll approached Robert Sumichrast, the Dean of TCB, about entering into an agreement providing for her early retirement. She testified that she was interested in retiring because "[i]t had been

2

a problematic time of employment, particularly under the former department head . . ., and there were lots of issues." Carroll's objectives in pursuing an early retirement agreement were to secure a significant salary increase and to ensure that the increase was factored into her pension so that she could afford to retire at age 62.

Sumichrast was amenable to Carroll's proposal provided that she agreed to a covenant not to sue UGA on any existing claims, and Sumichrast and Carroll began to negotiate an agreement. Carroll consulted the Teachers Retirement System of Georgia ("TRS") in choosing a retirement date to be sure that her raise would not be subject to "caps" and would be fully taken into account in calculating her pension. At the time, Carroll was earning approximately $92,000 under an academic year contract, and she was not paid during the summers and did not accrue annual leave. Since the salary increase Carroll would receive was significant, the UGA administration wanted to place Carroll on a 12-month contract in order to spread out payment over a year instead of nine months. The UGA Provost also believed it would be easier to have the higher salary approved under a 12-month contract. Under a 12-month contract, Carroll would accrue annual leave. Sumichrast testified that the accrual of annual leave was not a term discussed during his conversations with Carroll and "was incidental to her being placed on the 12-month contract."

3

On January 3, 2008, Sumichrast, on behalf of the Board, and Carroll executed a Settlement Agreement, Release, and Covenant Not to Sue (the "Settlement Agreement") providing for Carroll's retirement "no later than January 1, 2011" and stating, in relevant part, that

> [TCB] will convert [Carroll's] faculty contract from an academic year contract to a twelve (12) month contract with a salary rate of $144,667.00, effective January 1, 2008. . . On a twelve (12) month contract, [Carroll] will accrue annual leave at a rate of fourteen (14) hours per month. [Carroll] agrees that all annual leave will be used between the end of the Spring Semester 2010 and the date of her retirement. [Carroll] agrees that there will be no annual leave balance remaining as of the date of her retirement.

In May 2010, Carroll formally applied for retirement with TRS and requested a binding benefits letter. Thereafter, Carroll made an appointment with Travis Jackson, Senior Managing Consultant in the Human Resources Department at UGA, to obtain counseling on the retirement process. Carroll met with Jackson in late July 2010 and on August 6, 2010 after she had received her benefits letter from TRS. During the first meeting, Carroll took notes regarding steps she needed to take, which were kept in Jackson's file. The final item on the list states: "Get 146 annual leave in cash."

Jackson testified that he understood that Carroll had an agreement with her

4

department to retire early but was not aware that she had entered into a formal written settlement agreement or that it addressed annual leave. Thus, Jackson was operating under "standard protocol" and advised Carroll that she would be paid for her unused annual leave upon retirement, consistent with UGA and Board policy. Carroll testified, however, that she told Jackson that she had entered into a Settlement Agreement stating that she was to retire with no annual leave balance and that she showed him a copy of the agreement. According to Carroll, Jackson nonetheless advised her that "by law they either had to let me use it or pay me for it."

On August 6, 2010, Carroll sent an email to Charlotte Mason, her department head, stating that she planned to retire on September 1, 2010 and wished to have her accrued annual leave hours "paid out in cash with my last check of 8/31/10." Mason responded: "Thank you for letting me know . . . [F]rom your email, it look[s] like you have worked everything out. I will follow up with the Business Office on Monday to see if there is anything that needs to be done on this end." Carroll had 160 hours of unused annual leave at retirement and was not compensated for these hours.

1. Carroll argues that the trial court erred in granting summary judgment on her breach of contract claim because the Settlement Agreement is ambiguous regarding her right to compensation for unused annual leave. We find no error.

5

"The proper construction of a contract, and whether the contract is ambiguous, are questions of law for the court to decide." (Footnote and punctuation omitted.) *Roberson v. Leone*, 315 Ga. App. 459, 462 (726 SE2d 565) (2012).

> The first rule of contract construction is to determine the parties' intent, and if the language is clear the contract shall be enforced according to its clear terms. In fact, no construction is even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation.

(Footnote omitted.) *Longstreet v. Decker*, 312 Ga. App. 1, 3 (1) (717 SE2d 513) (2011). If the contract language is ambiguous, the court will apply the rules of contract construction, and only if an ambiguity remains thereafter will the parties' intent be determined by a jury or other factfinder. *Simpson v. Pendergast*, 290 Ga. App. 293, 296 (1) (659 SE2d 716) (2008). While a settlement agreement is a contract subject to the usual rules of contract construction, *City of Demorest v. Roberts & Dunahoo Properties, LLC*, 288 Ga. App. 708, 711-712 (1) (655 SE2d 617) (2007), we note that "the law . . . favors compromise, and when parties have entered into a definite, certain, and unambiguous agreement to settle, it should be enforced." (Citation and punctuation omitted.) *Savannah Yacht Corp. v. Thunderbolt Marine, Inc.*, 297 Ga. App. 104, 109 (1) (676 S.E2d 728) (2009).

Pursuant to the Settlement Agreement, Carroll clearly agreed "that all annual

6

leave will be used between the end of the Spring Semester 2010 and the date of her retirement" and "that there will be no annual leave balance remaining as of the date of her retirement." Even assuming *arguendo* that the meaning of this provision may be characterized as uncertain because it does not also expressly state that Carroll will not be compensated for any annual leave balance upon her retirement, application of the relevant rules of contract construction eliminates any ambiguity. OCGA § 13-2-2 (4) provides that "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." Consistent with this directive, we have held that

> a contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect. And, one of the most fundamental principles of construction is that a court should, if possible, construe a contract so as not to render any of its provisions meaningless.

*White v. Kaminsky*, 271 Ga. App. 719, 722 (610 SE2d 542) (2004). The terms of the Settlement Agreement providing that Carroll would use her annual leave and retire without an annual leave balance would serve no apparent purpose if there were no repercussion for non-compliance. Those provisions carry meaning only if their intent was to require Carroll to use her annual leave before retirement *and* preclude compensation for any remaining annual leave if she failed to do so.

7

We find no merit in Carroll's argument that the Settlement Agreement is ambiguous because it incorporates Board and UGA policies, which provide that unused annual leave, up to a certain threshold, will be paid upon termination of employment. While the Settlement Agreement states that "[Carroll] agrees to follow all [UGA] policies and procedures and that her failure to follow [UGA] and/or [Board] policies and procedures will subject her to disciplinary action," this provision relates to Carroll's contractual duties and does not generally incorporate UGA and/or Board policies. Compare *Board of Regents of Univ. System of Georgia v. Ambati*, 299 Ga. App. 804, 807 (1) (685 SE2d 719) (2009) (agreement stated that it was "made expressly subject to . . . the statutes and regulations of this institution and to the bylaws and policies of the [Board]").[1]

In sum, given the specific facts and posture of this case and consistent with the applicable rules of contract construction, we conclude that the entire purpose of the parties' Settlement Agreement was to allow Carroll to retire early at a higher salary

---

[1] To the extent Carroll contends that the 12-month employment contracts she entered into as a result of the Settlement Agreement incorporated UGA or Board policies , her argument fails because none of these contracts are included in the record. See *Farmer v. Branch Banking and Trust Co.*, 312 Ga. App. 519, 520 (718 SE2d 867) (2011) (burden is on party alleging error to show it affirmatively by the record).

8

in exchange for her consent to a covenant not to sue. In order to obtain the higher salary she bargained for with UGA and the Board, Carroll agreed to use her annual leave hours prior to retirement and to forego compensation for unused annual leave hours if she failed to do so.

2. Carroll maintains that genuine issues of material fact exist as to whether her subsequent communications with UGA employees or officials modified the Settlement Agreement. We disagree.

The Georgia Constitution provides that sovereign immunity extends to the State and its departments and agencies, and its exception to the defense of sovereign immunity for breach of contract actions applies only to actions for breach of a written contract. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (c) and (e). The Board is a state agency entitled to claim the protection of sovereign immunity. See *Board of Regents of Univ. System of Georgia v. Ruff*, 315 Ga. App. 452, 456 (2) (726 SE2d 451) (2012). "A waiver of sovereign immunity must be established by the party seeking to benefit from that waiver." (Footnote and punctuation omitted.) Id. Attempting to avoid the bar of sovereign immunity, Carroll argues that a written contract modification, like a written contract, may be created when there are multiple signed, contemporaneous agreements demonstrating an intent to enter a binding

9

contract and the individual documents, together, include all of the necessary terms. Carroll contends that the notes she took during her first meeting with Jackson and her email to Mason requesting compensation for her unused annual leave together comprise a written modification of the Settlement Agreement.

Neither Jackson nor any other purported UGA or Board representative signed Carroll's meeting notes. Moreover, Mason's response to Carroll's email did not demonstrate an intent to modify the Settlement Agreement because Mason's response did not mention Carroll's request for compensation for annual leave or represent that payment would be made. Under the circumstances, the notes and email correspondence do not constitute signed, contemporaneous agreements demonstrating an intent to modify the Settlement Agreement. See *Board of Regents of the Univ. System of Georgia v. Barnes*, 322 Ga. App. 47, 50 (2) (743 SE2d 609) (2013) (unauthenticated partial copy of student code of conduct and counseling center consent form signed only by plaintiff did not constitute signed, contemporaneous agreements between the parties demonstrating intent to enter binding contract); *Ruff*, supra, 315 Ga. App. at 457 (2) (Board did not waive sovereign immunity, as application for study abroad program, excerpts from manual governing program, and

written refund policy – none of which were signed by a representative of the Board or university – did not demonstrate Board's intent to enter into binding contract); see also *Thomas v. Garrett*, 265 Ga. 395, 396 (1) (456 SE2d 573) (1995) (contract modification requires a subsequent mutual agreement of contracting parties). Further, while a written contract may be modified by a subsequent agreement, a modification must be founded upon new consideration. *Ranger Const. Co. v. Robertshaw Controls Co.*, 166 Ga. App. 679, 681 (1) (305 SE2d 361) (1983). The notes and emails at issue do not point to any new consideration the Board would receive in return for modifying the Settlement Agreement.

3. Finally, Carroll contends that the trial court erred in dismissing her claims for promissory estoppel and unjust enrichment on the ground that they are barred by sovereign immunity. We disagree.

We review *de novo* the trial court's grant of the Board's motion to dismiss, bearing in mind that Carroll bears the burden of proving a waiver of sovereign immunity. See *Pelham v. Board of Regents of Univ. System of Georgia*, 321 Ga. App. 791 (743 SE2d 469) (2013). It is well-established that neither the Georgia Constitution nor any state statute waives sovereign immunity for equitable claims against the State, such as claims for unjust enrichment and promissory estoppel.

11

*DeKalb County School District v. Gold*, 318 Ga. App. 633, 640-641 (1) (b) (734 SE2d 466) (2012)*; Georgia Department of Community Health v. Data Inquiry, LLC*, 313 Ga. App. 683, 687-688 (2) (722 SE2d 403) (2012). Carroll argues that she is entitled to pursue her equitable claims against the Board under *Quillian v. Employees' Retirement System of Georgia*, in which the Georgia Supreme Court, without any discussion of sovereign immunity, held that under the "unique circumstances" of the case, the retirement system was estopped from recalculating and reducing the retirement benefits it had represented a retiring appellate judge would receive. 259 Ga. 253, 254 (5) (379 SE2d 515) (1989). In *Gold*, supra, 318 Ga. App. at 640-641 (1) (b), this Court considered and rejected the same argument Carroll advances, and we decline Carroll's invitation to reconsider *Gold* in this case.[2]

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

---

[2] Given that Carroll's underlying claims all fail, it follows that she cannot recover on her claim for attorney fees and costs under OCGA § 13-6-11. See *Lee v. Georgia Power Company*, 296 Ga. App. 719, 721 (2) (675 SE2d 465) (2009).

12