A97A0738. MACK II, INC. v. CITY OF ATLANTA et al.
(489 SE2d 357)

SMITH, Judge.

This action arose after the City of Atlanta Bureau of Purchasing & Real Estate (the Bureau) withdrew its approval of a food conces-

sion contract from Mack II. Following the withdrawal, Mack II filed a petition for writ of certiorari in superior court and also filed a complaint for equitable relief and damages. The trial court dismissed the complaint, concluding that review by writ of certiorari was the exclusive means of review of the Bureau's decision. From this dismissal Mack II appeals. We agree with the trial court's conclusion and affirm.

The following facts are undisputed. Mack II and two other corporations, Sylterbran, Inc. and J-Curt, Inc., submitted proposals for two food concessions at the Hartsfield Atlanta International Airport. The Department of Aviation reviewed the proposals and recommended acceptance of Mack II's proposal. The City of Atlanta passed a resolution approving the recommendation, which the Mayor approved in May 1995. The Bureau subsequently notified Sylterbran that the contract had been awarded to Mack II, and Sylterbran filed a protest of that award; the protest was denied by the Bureau.

Sylterbran then requested a hearing before a procurement appeals hearing officer, which was held August 1, 1995 (the first hearing). In a written order, the hearing officer concluded, among other things, that Mack II's bid must be rejected because Mack II did not meet certain criteria required by the "Invitation for Proposals" (IFP) issued by the City and that the City acted improperly in awarding the contract to Mack II because Mack II was not the most responsible and responsive bidder or firm as required by the City Code. The officer went on to require the City to consider the proposals submitted by the other two corporations. Finally, the order recited that if, after considering the other proposals, the City determined neither to be qualified, the City could reject both proposals. Defendant Felicia Strong-Whitiker, the Director of the City Bureau, notified Mack II that the City would reject all three proposals and would solicit new proposals.

Mack II then protested Strong-Whitiker's decision pursuant to certain provisions of the Atlanta City Code. After that protest was denied, Mack II filed a notice of appeal. On January 4, 1996, a hearing before another procurement appeals hearing officer was convened to address, among other things, Mack II's appeal (the second hearing).[1] By order issued February 12, 1996, the hearing officer dismissed Mack II's appeal. The officer concluded that under the doctrines of res judicata and collateral estoppel, the decision rendered following the first hearing precluded Mack II from pursuing its appeal.

---

[1] Sylterbran also appealed the City's decision to reject all three proposals and reissue its bid. The hearing officer in the second hearing consolidated these appeals over Mack II's objection and also considered the protest of another corporation, Atlanta Specialty Foods, on a related issue.

On March 13, 1996, Mack II obtained a court order sanctioning its petition for a writ of certiorari to the superior court. On March 14, 1996, Mack II filed its petition, and the writ was issued by the Fulton County Clerk of Court. On the same day the court sanctioned Mack II's petition for a writ of certiorari, Mack II filed a complaint against the City of Atlanta and Strong-Whitiker seeking a declaratory judgment, an injunction, specific performance, and damages under the United States and Georgia Constitutions. The trial court dismissed Mack II's complaint on the ground that the proceeding that aggrieved Mack II was quasi-judicial, from which a writ of certiorari was the only available means of review. This appeal by Mack II ensued.

1. The principal issue to be decided in this case is whether Mack II was required to seek review of the second hearing officer's February 1996 decision by certiorari to superior court. OCGA § 5-4-1 (a) provides in relevant part: "The writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers." In determining whether a writ of certiorari is the appropriate method of review we must decide whether the hearing officer whose order is being reviewed exercised judicial or quasi-judicial powers, or whether the officer merely exercised administrative or legislative functions. If the officer exercised judicial powers, his or her actions are subject to review on certiorari; if, however, the officer exercised legislative, executive, or ministerial powers, any error cannot be corrected by certiorari. *Carr v. City Council of Augusta*, 124 Ga. 116, hns. 1 & 2, 118 (52 SE 300) (1905).

The distinction between judicial and administrative functions is succinctly set out in *South View Cemetery Assn. v. Hailey*, 199 Ga. 478 (34 SE2d 863) (1945): "[T]he basic distinction between an administrative and a judicial act by officers other than judges is that a quasi-judicial action, contrary to an administrative function, is one in which all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure; and that no one deprived of such rights is bound by the action taken. [Cits.] . . . *[T]he test is whether the parties at interest had a right under the law to demand a trial in accordance with judicial procedure.*" (Emphasis supplied.) Id. at 481 (4) (a).

The City Code provides a mechanism by which certain parties "aggrieved in connection with the . . . solicitation or award of a contract may protest." City Code § 2-1161 (a). The aggrieved party may protest to the purchasing agent, who has authority, "prior to administrative appeal and commencement of an action in court . . . to settle and resolve a protest of an aggrieved [party], actual or prospective." City Code § 2-1161 (a), (b). An aggrieved party may appeal the

purchasing agent's decision to a procurement appeals hearing officer. See City Code §§ 2-1164; 2-1166. Of particular importance to this case, the City Code specifically sets out hearing procedures. The hearing officer must set a hearing date and "shall cause notice of the hearing date to be served upon all parties, by registered mail. Such notice shall set forth with particularity the charges filed by the aggrieved party and shall include the hearing date, time and place." City Code § 2-1166 (b) (1). The City Code further provides that "[a]t the hearing, all parties *shall be provided a fair and impartial hearing and shall be allowed to produce any and all evidence in either party's possession concerning the complaint.*" (Emphasis supplied.) City Code § 2-1166 (b) (2).

Applying the test set forth in *South View*, supra, it is beyond reasonable argument that the City Code conferred on Mack II, as an aggrieved party, the right to a hearing "in accordance with judicial procedure." Id. at 481 (4). Mack II was entitled to notice under the City ordinance, and a "fair and impartial hearing" was mandatory. In addition, Mack II was entitled pursuant to the ordinance to present "any and all evidence" in its possession concerning its grievance.

Contrary to Mack II's argument, the fact that the Civil Practice Act did not apply to the proceeding to limit evidence did not make the proceeding as defined by the City Code any less "judicial." The law does not so narrowly define a "judicial proceeding" as one requiring application of the Civil Practice Act. On the contrary, strict compliance with the rules of evidence is not required for a proceeding to be characterized as judicial. See *Jackson v. Spalding County*, 265 Ga. 792 (462 SE2d 361) (1995). Judicial actions simply cannot be so strictly defined. Several factors must be examined when determining whether a proceeding or action is judicial. For example, "judicial action" has been described as "an adjudication upon the rights of parties who in general appear or are brought before the tribunal by notice or process, and upon whose claims some decision or judgment is rendered. It implies impartiality, disinterestedness, a weighing of adverse claims, and is inconsistent with discretion on the one hand, — for the tribunal must decide according to law and the rights of parties, — or with dictation on the other; for in the first instance it must exercise its own judgment under the law, and not act under a mandate from another power. The tribunal is not always surrounded with the machinery of a court, nor will such machinery necessarily make its action judicial." (Citation and punctuation omitted.) *Southeastern Greyhound Lines v. Ga. Public-Svc. Comm.*, 181 Ga. 75, 78-79 (181 SE 834) (1935).[2]

---

[2] We also note Mack II's argument that the ordinance did not provide him a right to

Here, the process required by the City Code and undertaken by the litigants imports judicial action. It is not disputed that notice of the January 1996 hearing was given, and the rights of the respective parties were addressed. Adverse claims were analyzed and weighed by the hearing officer. The officer was required to make a decision according to the law — to exercise discretion and judgment in application of the law to a particular set of facts. Such action by the officer speaks of judicial, rather than merely ministerial or administrative, functions. See generally *Carr*, supra at 118 (council action was judicial, because council was required to apply the law to facts). The hearing and subsequent decision by the hearing officer were judicial in nature, and a writ of certiorari would lie.

*What It Is v. Jackson*, 146 Ga. App. 574 (246 SE2d 693) (1978) and *Ga. Farm Bureau Mut. Ins. Co. v. DeKalb County*, 167 Ga. App. 577 (306 SE2d 924) (1983), cited by Mack II, do not persuade us otherwise. The city ordinances in those cases did not provide the litigants with a hearing or trial as a matter of right "in accordance with judicial procedure." See *What It Is v. Jackson*, supra at 575; *Ga. Farm Bureau*, supra at 579. It is true that the ordinance in *Jackson* recited that all hearings were to be "administrative" in nature and that we relied on this fact in part to conclude that the actions at issue were not judicial in character. Id. at 576. Here, too, portions of the City Code use the word "administrative."[3] But descriptive uses of this word are not controlling. It is not the description of the office, body, or board performing the action that is scrutinized; the "character and nature of the authorized function" controls the issue of whether the function is judicial or quasi-judicial. *South View*, supra at 480.

The Supreme Court determined in *Southeastern Greyhound*, supra, that the Public Service Commission was exercising a *regulatory* function when it revoked a certificate of necessity; it did not apply a particular law to certain facts, thereby exercising a judicial

intervene, such as that provided by OCGA § 9-11-24. He claims that the ordinance did not give him the right to participate as a party in the first hearing, Sylterbran's appeal. It may be true that Mack II was not given this opportunity to participate as a party in the first hearing under the City Code, because it was not an aggrieved party. It is noteworthy, however, that the hearing officer found that Mack II *was* nevertheless represented at the first hearing and was not denied the opportunity to present evidence but did not seek to do so. Of more importance, though, is the fact that once Mack II became "aggrieved," it then was expressly permitted by the City Code to pursue an appeal. Mack II therefore was never denied the right to review by the City Code and cannot complain that the lack of any provision regarding intervention harmed it or negated the judicial nature of the proceeding.

[3] For example, the City Code gives the purchasing agent the "authority, prior to administrative appeal and commencement of an action, . . . to settle and resolve a protest." City Code § 2-1161 (b). The Code further recites that the purchasing agent's decision regarding a protest is "final and conclusive . . . unless any person adversely affected by the decision appeals administratively to the procurement appeals hearing officer." City Code § 2-1161 (d).

function. The converse was true in *Jackson v. Spalding County*, supra, in which the Supreme Court held that the county board of zoning appeals was functioning "as an administrative body making a quasi-judicial decision when it acted on" variance applications because it "determine[d] the facts and applie[d] the ordinance's legal standards to them." (Footnote omitted.) Id. at 794 (2).

In this case, regardless of the description of the process in the City Code, we must look to the particular function performed at the hearing in determining whether it was judicial or quasi-judicial in nature. When so viewed, it is clear that it was. The hearing officer engaged in a decision-making process, which is "akin to a judicial act." *Jackson v. Spalding County*, supra at 794 (2). In making its decision, the officer was required to examine evidence and apply legal standards to determine whether Mack II was precluded from litigating certain issues. Even though the nomenclature of the City Code mentioned "administrative" review, the officer made a quasi-judicial decision in acting on Mack II's claims. Id.[4]

In summary, the January 1996 hearing was a quasi-judicial proceeding as contemplated by OCGA § 5-4-1 because the ordinance authorizing the hearing entitled the litigants to a hearing "in accordance with judicial procedures" and because the hearing officer acted judicially, rather than administratively, in hearing argument and applying the law as the officer interpreted it to the facts before it. Consequently, review by writ of certiorari was required. The trial court therefore did not err in dismissing Mack II's complaint for equitable relief. See *Wilson v. Latham*, 227 Ga. 530, 533 (181 SE2d 830) (1971); *Soerries v. City of Columbus*, 222 Ga. App. 745 (476 SE2d 64) (1996); *Wooten v. City of Atlanta*, 149 Ga. App. 568 (254 SE2d 889) (1979).

2. Mack II also contends the trial court erroneously concluded that the January 1996 hearing comported with due process. We do not reach that issue because Mack II's complaint was not a proper method for raising this contention. The issue is properly reserved for the trial court on review of Mack II's writ of certiorari.

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED JULY 14, 1997 — ▮▮▮▮▮▮▮▮▮

*W. Roy Mays III*, for appellant.

---

[4] We make no decision here as to whether the hearing officer correctly or incorrectly applied the doctrines of res judicata and collateral estoppel, or whether it erroneously dismissed Mack II's appeal. That issue is not ripe, and it is reserved for the trial court's determination on the court's review by certiorari.

*Clifford E. Hardwick IV, Lemuel H. Ward, Jerolyn W. Ferrari, E. Y. Teague,* for appellees.