**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 15, 2013**

# In the Court of Appeals of Georgia

A12A1831. LASKAR v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA et al.

MCMILLIAN, Judge.

Joy Laskar, Ph.D., appeals the trial court's order dismissing his petition for writ of certiorari for lack of jurisdiction. Laskar filed the petition to challenge a decision of the Board of Regents of the University System of Georgia ("Board") upholding his dismissal from a position as a tenured professor at the Georgia Institute of Technology ("Georgia Tech"). The petition also named G. P. "Bud" Peterson, in his official capacity as President of Georgia Tech, as a Defendant. Because we find that the trial court lacked jurisdiction to consider the petition, we affirm the order of dismissal.

"We review a trial court's ruling on a motion to dismiss de novo, viewing all allegations in the complaint as true." (Footnote omitted.) *Oconee Community Service Bd. v. Holsey*, 266 Ga. App. 385 (597 SE2d 489) (2004). Thus, "[w]e owe no deference to a trial court's ruling on questions of law and review such issues de novo under the 'plain legal error' standard of review." (Citations omitted.) *Laughlin v. City of Atlanta*, 265 Ga. App. 61, 63 (592 SE2d 874) (2004).

So viewed, the record reflects that Laskar joined the Georgia Tech faculty as an assistant professor in 1995, became an associate professor in 1998, and received tenure in 2002. Each year, Laskar entered into a "Fiscal Year Employment Contract" with the Board setting out the terms of his employment. The contract is made expressly subject to applicable state and federal laws, Georgia Tech's rules and regulations, and the bylaws and policies of the Board. In 2003, Laskar was appointed Director of the Georgia Electronic Design Center ("GEDC"), an inter-disciplinary center at Georgia Tech "broadly focused on fostering technology [related to] communications applications."

On May 17, 2010, Peterson sent Laskar a letter stating that a recent internal audit had revealed what appeared to be "substantial evidence of malfeasance" on Laskar's part, including the misappropriation of Georgia Tech resources for the

benefit of Sayana Wireless, LLC ("Sayana"), a company partly owned by Laskar. The letter also informed Laskar that he was suspended until Georgia Tech concluded an investigation into the matter. By letter dated June 15, 2010, Dr. Gary May, Chair of the School of Electrical and Computer Engineering, notified Laskar that Georgia Tech intended to initiate dismissal proceedings against him, pursuant to the school's faculty handbook. May's letter explained that the first stage in the process was a meeting between Laskar and administrative officers to discuss a potential settlement. This meeting occurred, but the parties did not reach a settlement. The case then was referred to the Faculty Status and Grievance Committee (the "Grievance Committee"), which voted in favor of dismissal proceedings. May notified Laskar of the Grievance Committee's decision and informed him that he was entitled to a statement of the charges against him and a formal hearing upon request. Laskar requested both by letter dated July 28, 2010.

Several months later, on October 6, 2010, Laskar and his counsel received the statement of charges outlining five charges of willful violation of various Board and Georgia Tech policies. Following a formal hearing in March 2011 before a Faculty Hearing Committee (the "Hearing Committee"), the committee submitted its report and recommendation to Peterson. The report found that one charge was proven in

3

part, two charges were proven in full, and two charges were not proven, but the Hearing Committee concluded that the charges proven were "sufficiently egregious" to warrant Laskar's dismissal due to his leadership position at GEDC. The Hearing Committee apparently did not notify Laskar of its findings, but instead on May 14, 2011, Peterson wrote Laskar informing him that he agreed with the Hearing Committee's "recommendation" and that Laskar's "tenure [was] revoked and [his] employment [was] terminated, effective immediately." Laskar appealed Peterson's decision to the Board. On August 10, 2011, Laskar was informed by the Board's Vice Chancellor for Legal Affairs that his appeal had been presented to the Board, which upheld the decision to terminate him, prompting Laskar to file his petition for certiorari. On appeal, Laskar contends that the trial court erred in finding that it lacked jurisdiction to consider his petition.

Under OCGA § 5-4-1 (a), "[t]he writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers," with certain limitations not present here. Thus, the first step in weighing whether a trial court properly can hear a petition for certiorari is to determine whether the petition is seeking review of a judicial or quasi-judicial action or merely an administrative one:

4

A court[,] which is obliged to determine whether it has subject matter jurisdiction over a petition for writ of certiorari[,] must decide whether the hearing officer whose order is being reviewed exercised judicial or quasi-judicial powers[] or whether the officer merely exercised administrative or legislative functions. If the officer exercised judicial powers, his or her actions are subject to review on certiorari; if, however, the officer exercised legislative, executive, or ministerial powers, any error cannot be corrected by certiorari. . . .

(Citation omitted.) *Goddard v. City of Albany*, 285 Ga. 882, 882-883 (1) (684 SE2d 635) (2009). Thus, courts "must look to the particular function performed . . . in determining whether it was judicial or quasi-judicial in nature." *Mack II v. City of Atlanta*, 227 Ga. App. 305, 310 (1) (489 SE2d 357) (1997).

The difference between an administrative function and a judicial/quasi-judicial function generally turns on whether the parties were granted notice and the opportunity to be heard:

The basic distinction between an administrative and a judicial act by officers other than judges is that a quasi-judicial action, contrary to an administrative function, is one in which all parties are as a matter of right entitled to notice and to a hearing, with the opportunity afforded to present evidence under judicial forms of procedure; and that no one deprived of such rights is bound by the action taken. The test is whether

5

the parties at interest had a right under the law to demand a trial in accordance with judicial procedure.

*Goddard*, 285 Ga. at 883 (1).

But the courts also consider whether the hearing officer "was then required to examine and weigh the evidence and make a decision according to the law – to exercise discretion and judgment in application of the law . . . to a particular set of facts."[1] (Citation and punctuation omitted.) *Rozier v. Mayor and Aldermen of the City of Savannah*, 310 Ga. App. 178, 181 (712 SE2d 596) (2011) (petition for certiorari proper where hearing officer applied city beverage ordinance to facts). See also *Mack II,* 227 Ga. App. at 309 (1) (petition of certiorari proper for review of hearing officer's quasi-judicial function in applying legal standards of res judicata and collateral estoppel to determine whether party entitled to a hearing under city code); *Starnes v. Fulton County School District*, 233 Ga. App. 182, 184 (503 SE2d 665)

---

[1] We note that the Georgia Tech and Board policies applied by the Hearing Committee do not have the force and effect of law. Because they relate to "the employment, compensation, tenure, terms, retirement, or regulation of the employees" of a state agency, they are not considered rules requiring promulgation under the Georgia Administrative Procedures Act, OCGA § 50-13-2 (6) (H), nor are they codified in the Georgia Administrative Code. But even if the policies could be considered a form of law, the functions of the Hearing Committee and the Georgia Tech president in Laskar's dismissal proceedings are the determining factors in resolving the issue before us.

(1998) (pension board performed process "akin to judicial act" where it weighed evidence, assessed witness credibility and applied "fact-intensive" law governing line of duty pensions to facts).

Thus, a "'judicial action' has been described as 'an adjudication upon the rights of the parties who in general appear or are brought before the tribunal by notice or process and upon whose claims some decision or judgment is rendered.'" (Citation omitted.) *Mack II,* 227 Ga. App. at 308 (1). Further, courts have recognized that for a judicial action,

> [t]here must generally be two or more litigants. An issue of law or fact must be joined by them, within the jurisdiction of the tribunal, with respect to property or some personal right in which the litigants are interested. *Its conclusion must be binding* upon the parties until reversed or set aside in the manner provided by law for opening up judgments of courts.

(Citation and punctuation omitted; emphasis supplied.) *Southeastern Greyhound Lines v. Georgia Public Service Commission*, 181 Ga. 75, 83 (181 SE 834) (1935).

Accordingly, we must focus on the function of the hearing officer and the process used to determine whether they were quasi-judicial or administrative in nature. The Georgia Tech faculty manual and the Board's policy manual provide the

same procedures for the dismissal of both tenured faculty members and non-tenured faculty members during their contract term (the "Dismissal Procedures"). These procedures provide, in pertinent part, that a faculty member who receives notice of a pending dismissal has the right to request a hearing before a faculty hearing committee (the "Hearing Committee") and to obtain a formal statement of the charges against him. The parties are then granted notice of the hearing, the right to counsel, the right to present sworn testimony and evidence after first being afforded a reasonable opportunity to obtain witnesses and documentation, and the right to cross-examination, although the Hearing Committee is not bound by the strict rules of evidence. Nevertheless, the Hearing Committee must make findings based solely on the evidence presented and then report its findings to the Georgia Tech president and the faculty member.

These findings, however, along with any recommendations regarding the appropriate penalty for any violations, are not binding on the faculty member, Georgia Tech or its president, and thus the Hearing Committee's report does not determine the faculty member's employment status. Rather, that decision is left to the president. The Dismissal Procedures provide that if the Hearing Committee finds that adequate grounds for dismissal have *not* been established, and the president does not

8

agree, he need only "state the reasons in writing to the Committee for response before rendering a final decision." And if the Hearing Committee recommends an academic penalty less than dismissal, the president is not required to follow this recommendation. Although the Dismissal Procedures do not specifically address the procedure to be followed when the Hearing Committee finds that dismissal is warranted, absolutely nothing in the procedures makes such a finding binding on the president. Moreover, in contrast to the requirement placed on the Hearing Committee, the Dismissal Procedures do not specifically require the president to base his decision solely on the evidence presented at the hearing. Rather, the final dismissal decision is left to the president, and if he decides that sufficient cause exists, he may dismiss the faculty member even if the Hearing Committee finds no adequate basis for such an action.

The Hearing Committee's function, therefore, is analogous to that of the liquor license review board in *What It Is, Inc. v. Jackson*, 146 Ga. App. 574 (246 SE2d 693) (1978). The pertinent city ordinance in that case charged the board with "'conducting hearings on any charges which may be brought against any licensee under the police powers of the city where those charges may be the basis for suspension or revocation of the license and to report its findings and recommendations to the mayor.'" Id. at

9

575. The license review board conducted a hearing on charges that the license holder "had violated specific provisions of the law at its place of business," and recommended the revocation of the liquor license to the mayor, and the mayor approved the recommendation. Id.

Considering whether the license holder had the right to petition for certiorari, this Court noted first that the city ordinance did not grant the license holder an express right to "a trial in accordance with judicial procedure" because it provided that all hearings "'shall be administrative'" and did not require compliance with the evidentiary rules. But the Court also found that "the board was not authorized to enter any judgment but only was permitted to make a recommendation to the mayor which was not binding on him," and thus the board's authority "does not fall within the category of a judicial proceeding." Id. And "the mayor, who had only administrative or executive powers, could only approve or disapprove the board's recommendation." Id. The license holder, therefore, "was not as a matter of right entitled to any judicial hearing before him. The action of the mayor was administrative." Id. Based upon all these factors, the Court concluded that the trial court properly dismissed the license holder's petition for certiorari.

10

Although the Dismissal Procedures did not expressly label the Hearing Committee proceeding as administrative, this Court's decision in *Mack II* clarified that neither descriptive terms nor a lack of judicial procedure control the analysis. *Mack II*, 277 Ga. App. at 308-309 (1). Instead, it is the "character and nature of the authorized function" that controls whether the hearing officer is acting judicially or administratively. (Citation and punctuation omitted.) Id. at 309 (1). The function of the Hearing Committee in this case, like the license review board in *Jackson*, was not judicial in nature because it did not render a binding decision, and the president, like the mayor, acted only administratively in accepting the recommendation.

We conclude, therefore, that despite the procedures for notice and a hearing before the Hearing Committee, the decision to dismiss Laskar was essentially an administrative one.[2] "It is one thing to provide that a thing may be done if it is made to appear that under the law a certain situation exists; it is another thing to provide that a thing may be done if in the opinion of a named party a certain situation exists. The one is justiciable; the other is administrative." *Southeastern Greyhound Lines*,

---

[2] The trial court reached a similar conclusion, finding that although the termination procedures in this case "may *appear* quasi-judicial, [Laskar] had no right under law to demand a trial in accordance with judicial procedure." (Emphasis in original.)

11

181 Ga. at 80. And at Georgia Tech, whatever the Hearing Committee decides, a tenured professor may be fired if in the president's opinion good cause exists for his or her discharge. This case, therefore, is materially similar to the Georgia Supreme Court's holding in *Southeastern Greyhound Lines* that the Georgia Public- Service Commission was acting administratively when, "after notice and opportunity to be heard and for reasonable cause," it revoked a motor common carrier's certificate of need because "in the opinion of the commission" the carrier was not providing adequate service. Id. at 79. See 1931 Ga. L., p. 199, Secs. 2 (b) and 4 (d).

As *Southeastern Greyhound Lines* demonstrates, neither the requirement that the Georgia Tech president find cause in order to dismiss Laskar nor the provision of notice and the opportunity to be heard alters the nature of his decision:

> An act is none the less ministerial because the person performing it may have to satisfy himself that the state of facts exists under which it is his right and duty to perform the act. . . . [Thus,] it must still be recognized that the ascertainment of facts, or the reaching of conclusions upon evidence taken in the course of a hearing of parties interested, may be entirely proper in the exercise of executive or legislative, as [opposed to] judicial powers. . . . It is the nature of the final act that determines the nature of the previous inquiry.

(Citations and punctuation omitted.) *Southeastern Greyhound Lines,* 180 Ga. at 80-81. Here, the final act resulting in Laskar's discharge was not the Hearing Committee's report, but rather the president's finding that good cause existed to revoke Laskar's tenure and terminate his employment, and that decision was an administrative one.

And although a faculty member may seek Board review of the president's decision and the Board is required "to investigate the matter thoroughly" before rendering a decision, the faculty member has no right to any further hearing on the matter. Rather, any opportunity for a notice and a hearing is restricted to the Hearing Committee, which acts merely in an advisory capacity to the president and by extension to the Board. Thus, the Board's subsequent review of the president's decision must also be considered administrative in nature.

The Dismissal Procedures in this case are thus distinguishable from the procedures followed in cases where our courts have found that a quasi-judicial action occurred. For example, in *Morman v. Pritchard*, 108 Ga. App. 247 (132 SE2d 561) (1963), the Board of Education of Richmond County discharged Morman from her teaching position, and she filed a petition for certiorari in court without first exercising her right of appeal to the State Board of Education. Morman's discharge

13

hearing was conducted pursuant to a statute that authorizes a "county, city or other independent board of education" to conduct evidentiary hearings to determine any "local controversy." See OCGA § 20-2-1160 (a) (formerly Code of 1933, § 32-910). That statute provides that the board's decision "shall be binding on the parties," provided that they are granted a right of appeal to the Board of Education. Id. This Court concluded that the county board of education hearing was quasi-judicial in nature because the discharged teacher "had a right to appear . . . , had a right to be heard, had a right to notice in advance of the hearing, and had a right to present witnesses and give evidence before the board, and the decision of the board was binding on the board and on the teacher concerned." *Morman*, 108 Ga. App. at 253 (1) (b). See also, e. g., *Mack II*, 227 Ga. App. at 309 (appellate procedure in city code judicial in nature where hearing officer required to make a decision according to the law to resolve adverse claims); *Board of Commissioners of Effingham County v. Farmer*, 228 Ga. App. 819 (493 SE2d 21) (1997) (board acted judicially where it granted terminated employee a public hearing and opportunity to present evidence to review final termination for cause). Although the hearing officers in these cases acted in a judiciary capacity in rendering or reviewing a final decision, the Hearing Committee in this case acted more in a fact-finding and advisory capacity for the

14

Georgia Tech president, who alone had the authority to make the final decision. And the Board's decision in Laskar's subsequent appeal relied solely upon the existing administrative record. Accordingly, we find that the trial court properly held that it lacked jurisdiction to consider Laskar's petition for certiorari.

We note, however, that Laskar is not without judicial recourse with regard to his dismissal. He had a written contract with the Board, incorporating the Dismissal Procedures, and even though the Board is a state agency protected by sovereign immunity, that defense "is waived as to any action ex contractu for the breach of any written contract entered into by the state or its departments and agencies." (Punctuation, emphasis and footnote omitted.) *Board of Regents of University System of Georgia v. Ruff*, 315 Ga. App. 452, 456 (2) (726 SE2d 451) (2012). See also Ga. Const. 1983, Art. I, Sec. II, Par. IX; *Moffie v. Oglethorpe University*, 186 Ga. App. 328, 329 (367 SE2d 112) (1988) (concluding that tenure provisions in a faculty handbook "of which plaintiff was aware, form a part of the plaintiff's contract of employment") (citation omitted). Similarly, he could have raised his due process claims in a direct action against the Board. See, e. g., *McKinney v. Pate,* 20 F3d 1550, 1557 (11th Cir. 1994), cert. denied, 513 U.S. 1110 (15 SCt 898, 130 LE2d 783) (1995) (a claim under 42 USC § 1983 arises when the State refuses to provide

15

procedural due process); *Edmonds v. Board of Regents of University System of Georgia*, 302 Ga. App. 1, 11-12 (4) (b) (689 SE2d 352) (2009) (reviewing constitutional due process claim against Board filed by tenured Georgia Tech professor after he was suspended indefinitely).

*Judgment affirmed. Barnes, P. J., concurs. McFadden, J., concurs fully and specially.*

A12A1831.  LASKAR  v.  BOARD  OF  REGENTS  OF  THE
   UNIVERSITY SYSTEM OF GEORGIA et al.
   MCFADDEN, Judge, concurring fully and specially.

I concur fully but reluctantly. I write separately to acknowledge the practical

consequences of our decision.

We have rejected Dr. Laskar's argument for a bright line between tenure

litigation involving private institutions and such litigation involving public

institutions. When such litigation involves private institutions, Dr. Laskar argues,

tenure rights are enforceable in contract actions. See *Moffie v. Oglethorpe University,*

186 Ga. App. 328, 329 (367 SE2d 112) (1988). When such disputes involve public

institutions, he argues, the proper procedure is certiorari from superior court pursuant

to OCGA § 5-4-1 et seq.

Instead we have held that, as to public institutions, the available procedure turns on a close – and costly – examination of the institution's procedures. Such an examination will need to be performed anew of the procedures at each public institution where such a dispute arises. Indeed if Georgia Tech has revised its procedures when it next faces such a dispute, its procedures will then need to be reexamined.

The people of Georgia would, in my opinion, be well served by a comprehensive undertaking to secure "the just, speedy and inexpensive determination" of actions arguably within the appellate and certiorari jurisdiction of our state and superior courts. See OCGA § 9-11-1. But such an undertaking falls within the competence and authority of the General Assembly.