### S16A1201. WOLFE v. BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA et al.
(794 SE2d 85)

NAHMIAS, Justice.

In 2014, Brooks A. Keel, the president of Georgia Southern University, terminated the employment contract of tenured professor Lorne Wolfe for violation of University policies, and the Board of Regents of the University System of Georgia denied Wolfe's application for review of his termination. Wolfe then filed a complaint for breach of contract and mandamus against the Board and Keel in the Superior Court of Fulton County, seeking reinstatement and other relief. The superior court granted the Board's motion for summary judgment, and Wolfe filed a notice of appeal directed to this Court. As explained below, this appeal falls within OCGA § 5-6-35 (a) (1), and an application to appeal was therefore required. Because Wolfe did not file a discretionary application, this Court lacks jurisdiction to consider the merits of his case. Accordingly, we dismiss the appeal.

1. In October 2013, Wolfe was a tenured professor at Georgia Southern University. His annual contract with the University specified that "[t]his agreement is made expressly subject to the applicable state and federal laws and to the statutes and regulations of this institution and to the Bylaws and Policies of the Board of Regents." The University and the Board had policies against sexual and workplace harassment[1] and disruption of University

---

[1] The University's "Policy Prohibiting Sexual Harassment" said:

Sexual harassment is defined as unwelcome conduct of a sexual nature. Such conduct may include sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature. Conduct that is severe or pervasive enough to create a hostile work or academic environment constitutes one type of sexual

activities,[2] violation of which could lead to termination.

On the morning of October 16, 2013, E. J., a female graduate student in Wolfe's department, and D. M., a male graduate student, were in a break room when E. J. spilled hot coffee on her shirt and shouted. She was looking around for a towel to dry off when Wolfe walked into the break room. He asked what happened, and E. J. replied that she spilled hot coffee on herself. Wolfe said to her, "It's okay; you can dry your breasts off in front of me," and then sat down; according to Wolfe, he knew E. J. only from seeing her around the department and had spoken to her less than a handful of times. E. J. gave Wolfe a look to let him know that his comment was unwelcome, and Wolfe said, "Well, f**k you then." As E. J. gathered her things to leave, Wolfe turned to D. M. and said, "Who are you scoring with? Undergrad? Grad? Is it [E. J.]? She's loose. She's hot; now her breasts are hot." E. J. left the break room and was unable to work for the rest of the day because she was so distraught over Wolfe's conduct.

E. J. filed a sexual harassment complaint against Wolfe with the University's Director of Diversity Services. The director interviewed E. J., D. M., and Wolfe, reviewed Wolfe's personnel file, and concluded that Wolfe had created a hostile environment for E. J. in violation of University policy. On October 18, the director sent his investigation report to the University's provost, with a copy to Wolfe.

After several e-mails from Wolfe to the provost, in which Wolfe pleaded for one more chance to correct his behavior, the provost's assistant sent Wolfe an e-mail on October 22 to arrange a meeting. Wolfe then called the provost's office, and the provost's assistant, who was female, answered the phone. After a few pleasantries, the assistant said, "I guess you're calling me because of the e-mail I just

---

harassment. Depending on the severity, it is possible for a single incident to be sufficient to constitute a hostile environment. . . . Students should and employees must report [to the Director of Diversity Services] any unwelcome conduct of a sexual nature regardless of severity or the number of occurrences so that Georgia Southern can take steps to address harassment before it creates a hostile environment.

When a finding is made that sexual harassment has occurred, the University will take appropriate action ranging from informal resolution up to and including termination or dismissal in accordance with the requirements of due process.

The Board of Regents Policy Manual included a similar policy. In addition, the University's "Harassment in the Workplace" policy provided, among other things, that "[t]he University strictly prohibits employees from engaging in offensive or inappropriate harassing behavior at work. All employees are personally responsible for ensuring that the workplace is free from harassment, including sexual harassment."

[2] A University policy listing grounds for which a professor could be terminated included "[d]isruption of any teaching, research, administrative, disciplinary, public service or other authorized activity." The Board of Regents Policy Manual contained an identical provision.

sent you." Wolfe replied, "No, I called you to find out what you're wearing." The assistant was shocked by Wolfe's comment and reported it to the provost.

On October 24, the provost met with Wolfe to seek a resolution of the situation. On October 29, the provost sent Wolfe a letter saying that she agreed with the director's findings and that she had received notification from Wolfe's attorney that Wolfe did not intend to resign. The letter informed Wolfe that he was on unpaid administrative leave effective immediately and that the provost was assembling a faculty committee to conduct an informal inquiry pursuant to Board of Regents policy. On November 19, that committee recommended that proceedings be undertaken to terminate Wolfe. Wolfe then requested a formal statement of the charges against him and a formal hearing before a faculty hearing committee.

On December 13, 2013, the provost sent Wolfe's counsel a formal statement of the charges, which alleged that Wolfe

> has engaged in "disruption of . . . teaching, research, administrative, disciplinary, public service, or other authorized activity" by creating a hostile environment based on sexual harassment in violation of University Policy and applicable law. In addition, Dr. Wolfe has exhibited a pattern of inappropriate interaction with others, which behavior has continued despite multiple training sessions and despite Dr. Wolfe's own expressions of recognition and regret.[3]

The formal evidentiary hearing took place over the course of two days in April 2014. On May 7, the faculty hearing committee submitted its report, which recommended against Wolfe's immediate termination, in part because the committee did not find that the one incident involving E. J. "constitute[d] creation of a hostile environment." Instead, the committee recommended that Wolfe be demoted and that his salary be cut, among other sanctions.

On May 12, the University's president, Brooks A. Keel, wrote to the faculty hearing committee to explain why he disagreed with its recommendations and intended to terminate Wolfe. On May 19, Keel

---

[3] The statement referenced four other complaints against Wolfe: A 2005 incident involving Wolfe's use of sexist language with a student; an April 2012 incident involving an e-mail Wolfe sent to a student asking her to bring her lingerie to a charity clothing drive; an unsubstantiated June 2013 complaint; and another October 2013 incident in which Wolfe sent an e-mail to all department faculty and graduate students offering $10 and a pair of his dirty underwear for the return of a missing pair of bicycle gloves.

notified Wolfe by letter of his termination for cause, concluding:

> I have reviewed the Committee's work and find the following charges sustained: violation of the University's Policy Prohibiting Sexual Harassment and policy entitled, "Harassment in the Workplace"; and a pattern of inappropriate interaction with others, which behavior has continued despite multiple training sessions . . . and expressions of recognition and regret.

Wolfe then sought review of Keel's decision by the Board of Regents. On August 20, 2014, the Board sent Wolfe a letter declining his application for review and advising that "[t]his is the final action to be taken by the Board in this case."

On September 16, 2014, Wolfe filed a complaint for breach of contract and mandamus against the Board and Keel in the Superior Court of Fulton County, seeking reinstatement as well as damages, attorney fees, and other relief. Discovery ensued, and the parties filed cross-motions for summary judgment. On November 23, 2015, the superior court entered an order denying Wolfe's motion and granting summary judgment in favor of the Board and Keel. The order was based on a detailed review of the grounds Keel gave for his decision and whether that decision was consistent with University and Board policies.

On December 3, 2015, Wolfe filed a notice of appeal directed to this Court. On April 18, 2016, we dismissed Wolfe's direct appeal based on his failure to file an application to appeal, explaining in an unpublished order that the decision of the superior court involved the review of a decision of a state administrative agency (the Board), and that Wolfe therefore was required to apply for a discretionary appeal under OCGA § 5-6-35 (a) (1). Wolfe filed a motion for reconsideration, which we granted, reinstating the appeal and directing the parties to address the appellate jurisdiction issue. They did so in their briefs and at oral argument on September 13. Having considered their arguments carefully and with the benefit of our recent decision in *State of Ga. v. Intl. Keystone Knights of the Ku Klux Klan*, 299 Ga. 392 (788 SE2d 455) (2016) (*Keystone Knights*), we now reach the same conclusion as we did originally.

2. OCGA § 5-6-35 (a) (1) requires an application to appeal "from decisions of the superior courts reviewing decisions of the State Board of Workers' Compensation, the State Board of Education, auditors, state and local administrative agencies, and lower courts by certior-

ari or de novo proceedings."[4] In *Keystone Knights*, we provided additional guidance on how to determine what is a "state administrative agency" under OCGA § 5-6-35 (a) (1), what is an agency "decision" for purposes of the statute, and what constitutes a review by a superior court of an agency decision. We will apply that guidance to the appeal before us now.

(a) To begin with, it is clear that the Board of Regents is a state administrative agency for purposes of OCGA § 5-6-35 (a) (1). We have held that the Board is "an agency of the State" in various contexts, including sovereign immunity, see *Olvera v. Univ. System of Ga. Bd. of Regents*, 298 Ga. 425, 426 (782 SE2d 436) (2016), and the Open Records Act, see *Bd. of Regents of Univ. System of Ga. v. Atlanta Journal*, 259 Ga. 214, 214 (378 SE2d 305) (1989). See also OCGA §§ 20-3-20 (a) (providing that "the board of regents is created"), 20-3-80 (referring to the Board as "a state agency").

Moreover, as relevant to this case, the Board of Regents has statutory authority "[t]o elect or appoint professors . . . for all of the schools in the university system"; "to discontinue or remove them as the good of the system or any of its schools or institutions or stations may require"; and "to make such reasonable rules and regulations as are necessary for the performance of its duties." OCGA § 20-3-31 (1), (2). The Board exercised that authority to adopt procedural policies for public universities to follow in entering into employment contracts with professors and in terminating those contracts, as well as substantive policies establishing standards of conduct for professors and other employees. Under these policies, which were incorporated into Wolfe's contract, the Board and the University delineated types of misconduct that could lead to termination and set forth the procedures to be followed before a professor's contract is terminated. Thus, in this case, the Board was acting as a state administrative agency for purposes of OCGA § 5-6-35 (a) (1). See *Keystone Knights*, 299 Ga. at 399 n. 20 (explaining for similar reasons that, in the context of that case, the Georgia Department of Transportation was a "state administrative agency" for purposes of OCGA § 5-6-35 (a) (1)).

(b) We next consider whether the Board of Regents made a "decision" in this case. In *Keystone Knights*, we explained that a "decision," as that term is used in OCGA § 5-6-35 (a) (1), is one that

---

[4] The application requirement for appeals in the types of cases listed in OCGA § 5-6-35 (a) applies based on the underlying subject matter of the appeal, even if an order like the superior court's final order granting summary judgment against Wolfe on his mandamus claim would otherwise be immediately appealable pursuant to OCGA § 9-11-56 (h) or § 5-6-34 (a) (1) or (7). See *Ferguson v. Composite State Bd. of Med. Examiners*, 275 Ga. 255, 256-257 (564 SE2d 715) (2002).

is adjudicatory in nature, as opposed to executive or legislative. See 299 Ga. at 400-401. A decision of an adjudicatory nature is one that is "immediate in application, [is] specific in application, and commonly involve[s] an assessment of 'facts about the parties and their activities, businesses, and properties.' " Id. at 401 (citations omitted). It is not one that is, " 'as in the case of legislative or rule making action, general and future in effect.' " Id. (citation omitted).

We noted that this understanding of "decision" was consistent with our precedents, as we have often said that OCGA § 5-6-35 (a) (1) requires an application to appeal when "two tribunals" — i.e., an administrative agency or other lower tribunal and a superior court — have "adjudicated" the merits of a specific case. See *Keystone Knights*, 299 Ga. at 403 (citing cases). We also rejected the argument that such a decision "must be marked by formal adjudicative procedures," explaining that "we do not understand the usual and common usage of 'decision' to connote any particular degree of formality in the decisional process," and there is not "any particular degree of formality inherent in the notion of adjudicative decisionmaking." Id. at 404-405.

Under these principles, it is clear that the Board of Regents made a decision that was adjudicative in nature in terminating Wolfe. The decision was not of general and future effect; rather, it was based on an assessment of the particular facts surrounding a single person's past conduct, it involved an application of Board rules and policies to that conduct, and it had the immediate and specific consequence of terminating Wolfe's contract to serve as a professor. See *Keystone Knights*, 299 Ga. at 404 (holding that the Department of Transportation's denial of the Keystone Knights' application to participate in a program established and administered by the Department was adjudicative in nature because, among other things, the "denial was not a rule or statement of policy that was general and prospective in application. To the contrary, the denial was a determination to reject a single application submitted by a specific applicant, and it had the immediate and particular consequence of disallowing that applicant to participate in the Adopt-A-Highway program upon the terms proposed in the application.").

(c) The final consideration in determining whether Wolfe was required to file an application to appeal under OCGA § 5-6-35 (a) (1) is whether the decision of the superior court was one that reviewed the decision of the Board of Regents. Wolfe advances two reasons why it was not, neither of which is persuasive.

First, Wolfe argues that the superior court was not reviewing an administrative agency decision because it did not discuss the Board's denial of Wolfe's application for discretionary review of President

Keel's decision to terminate him. Under the procedures adopted by the Board, however, the president of a university is granted the authority to make a decision to terminate the contract of a faculty member. The Board has the discretionary authority to review that decision, but is not required to do so. Here, the Board declined to review the president's decision, making Keel's decision the operative decision of the agency on the matter. See *Keystone Knights*, 299 Ga. at 406 (recognizing that agency regulations can identify the "point of decision for the agency" and invest officers of an agency "with legal authority to make the determination for the agency"); *Selke v. Carson*, 295 Ga. 628, 629 (759 SE2d 853) (2014) (holding that a county personnel director made an agency decision for purposes of OCGA § 5-6-35 (a) (1) when she declined to forward an appeal to the civil service board on the ground that the layoff sought to be appealed was not an appealable event).

More vociferously, Wolfe contends that under the rationale of *Laskar v. Bd. of Regents of Univ. System of Ga.*, 320 Ga. App. 414 (740 SE2d 179) (2013), the superior court could not have conducted a review of the agency decision in this case. *Laskar*, however, did not concern the *appellate* jurisdiction question at issue in this case. In *Laskar*, the Court of Appeals held that a Georgia Tech professor could not file a writ of certiorari pursuant to OCGA § 5-4-1 in the superior court to obtain judicial review of the decision of the university's president to terminate the professor's employment. See *Laskar*, 320 Ga. App. at 420-421. The Court of Appeals noted, however, that the professor was not "without judicial recourse with regard to his dismissal," because he could file an action in the superior court alleging breach of his employment contract. See id. at 421. Wolfe asserts that his inability to seek initial judicial review by a writ of certiorari means that no judicial review of the Board's decision (through President Keel) to terminate his contract was available in the superior court and that his breach of contract action in the superior court could not and did not constitute such a review. That assertion is unfounded.

*Laskar* addressed only how an aggrieved party can obtain review of an agency decision in a superior court, and in particular whether a terminated Georgia Tech professor could seek such review using a writ of certiorari under OCGA § 5-4-1 (an issue on which we express no opinion). The Court of Appeals did not address OCGA § 5-6-35 (a) (1), which governs how to take an appeal from a superior court to an appellate court. *Laskar* did not purport to hold that OCGA § 5-6-35 (a) (1) is limited to a superior court's review of an agency decision pursuant to a properly filed writ of certiorari under OCGA § 5-4-1, nor did *Laskar* purport to determine whether a breach of contract

action filed in superior court involves review of an underlying agency decision within the meaning of the discretionary appeal statute. Consequently, *Laskar* provides no real guidance in determining whether the superior court reviewed an agency decision in this case.

Instead, this case is governed by the well-settled principle that "when we consider the nature of the proceedings in the superior court for the purposes of OCGA § 5-6-35 (a) (1), we look to the substance of those proceedings, not merely the form of the relief sought." *Keystone Knights*, 299 Ga. at 407. Accord *Ladzinske v. Allen*, 280 Ga. 264, 265 (626 SE2d 83) (2006); *Ferguson v. Composite State Bd. of Med. Examiners*, 275 Ga. 255, 256-257 (564 SE2d 715) (2002). "If a party to a judicial proceeding 'attacks or defends the validity of an administrative ruling and seeks to prevent or promote the enforcement thereof, the trial court must necessarily "review" the administrative decision (to resolve the merits of the case).' " *Keystone Knights*, 299 Ga. at 408 (citation omitted).

Thus, we have held that if a party attacked or defended an adjudicative administrative decision in the superior court by filing or opposing a petition for mandamus, a complaint for breach of contract, an action for declaratory relief, or a petition for injunctive relief — as well as a writ of certiorari — the party seeking to appeal from an adverse decision of the superior court must comply with the discretionary appeal statute. See, e.g., *Keystone Knights*, 299 Ga. at 394 (mandamus, injunction, and declaratory judgment); *Hamryka v. City of Dawsonville*, 291 Ga. 124, 125 (728 SE2d 197) (2012) (mandamus and declaratory judgment); *Ladzinske*, 280 Ga. at 264 (mandamus, declaratory judgment, and injunctive relief); *Prison Health Svcs., Inc. v. Ga. Dept. of Admin. Svcs.*, 265 Ga. 810, 811 (462 SE2d 601) (1995) (breach of contract, mandamus, and injunctive relief). See also *Salter v. City of Thomaston*, 200 Ga. App. 536, 536 (409 SE2d 88) (1991) (relying on OCGA § 5-6-35 (a) (1) to dismiss a direct appeal from a superior court decision reviewing a decision of a lower tribunal by writ of certiorari). Indeed, OCGA § 5-6-35 (a) (1) applies by its plain terms whether the superior court's review of the lower tribunal's decision was "by certiorari or de novo proceedings." So we reiterate today what we said not long ago in *Hamryka*: OCGA § 5-6-35 (a) (1) is not limited by the process by which a decision is taken "*to* the superior court but instead applies to appeals *from* the superior court's 'review( )' of an administrative agency decision, however that judicial review is sought." 291 Ga. at 125 (emphasis in original).

In this case, Wolfe squarely attacked the Board of Regents' decision, made by President Keel, to terminate his contract in the breach of contract and mandamus claims that he filed in the superior court. Wolfe alleged, for example, that Keel's "decision set forth no

facts supporting [Wolfe's] termination or [Keel's] basis for rejecting the [Faculty] Hearing Committee's recommendations," and that "Keel set forth no standards by which Dr. Wolfe's conduct was measured, and, in fact, failed to [take] the facts rendered at the hearing into account in his decision." In sum, Wolfe alleged that procedural and substantive errors in applying the relevant agency policies occurred in the agency proceedings that resulted in the agency decision to terminate his contract, and based on those errors, he sought, among other relief, the direct reversal of that decision by a superior court order reinstating him to his position. Wolfe's complaint asked the superior court to review a decision of a state administrative agency; the superior court reviewed that decision, denying relief; and Wolfe is now appealing the decision of the superior court.

(d) Under this Court's precedents, these determinations dictate that Wolfe was required by OCGA § 5-6-35 (a) (1) to bring his appeal by way of an application for discretionary appeal and that his failure to do so requires the dismissal of his direct appeal. See *Keystone Knights*, 299 Ga. at 399. In a final effort to avoid this result, Wolfe maintains that we should follow three other cases that have permitted direct appeals of breach of contract actions against state agencies. See *State Dept. of Corrections v. Developers Surety & Indem. Co.*, 295 Ga. 741 (763 SE2d 868) (2014); *Carroll v. Bd. of Regents of Univ. System of Ga.*, 324 Ga. App. 598 (751 SE2d 421) (2013); *Bd. of Regents of Univ. System of Ga. v. Barnes*, 322 Ga. App. 47 (743 SE2d 609) (2013). Because these decisions did not address the appellate court's jurisdiction, however, they are not authoritative precedent on any jurisdictional issue. " 'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.' " *Durham v. Durham*, 291 Ga. 231, 234 (728 SE2d 627) (2012) (citation omitted).

Moreover, those cases are distinguishable from this one. Here, under Wolfe's contract with the Board of Regents, for the Board to terminate his contract as a tenured professor, the Board and Wolfe were required to go through administrative proceedings that resulted in a definitive agency decision on the contract issues for purposes of OCGA § 5-6-35 (a) (1). In *Developers Surety* and *Carroll*, by contrast, it appears that no administrative proceedings were required to occur as part of the contract and no administrative proceedings resulting in an agency decision within the meaning of OCGA § 5-6-35 (a) (1) in fact occurred. See *Developers Surety*, 295 Ga. 741 (involving a lawsuit alleging breach of a construction contract); *Carroll*, 324 Ga. App. 598 (involving a breach of contract action brought by a professor based on

the interpretation of a settlement agreement with the Board of Regents that permitted her to retire early).

The last case on which Wolfe relies is a Court of Appeals decision in which it is unclear whether the decision to expel a student was executive or adjudicative in nature. See *Barnes*, 322 Ga. App. at 47-50; *Keystone Knights*, 299 Ga. at 400. To the extent that *Barnes* can be read to permit a direct appeal from an adjudicative agency decision reviewed by the superior court within the meaning of OCGA § 5-6-35 (a) (1), it is hereby disapproved. And in contrast to the distinguishable direct appeal cases that Wolfe cites, we note that in a case in which a local board of education terminated several teachers' contracts, had that decision reversed by a state administrative agency, and then lost on the merits in superior court, the local board filed an application to appeal pursuant to OCGA § 5-6-35 (a) (1), which the Court of Appeals granted. See *Clayton County Bd. of Ed. v. Wilmer*, 325 Ga. App. 637, 637 n. 1 (753 SE2d 459) (2014). See also *English v. Delbridge*, 216 Ga. App. 366, 366-367 (454 SE2d 175) (1995) (holding that a superior court decision reviewing de novo a magistrate court's ruling on an action on an account contract had to be appealed by application for discretionary appeal under OCGA § 5-6-35 (a) (1)).[5]

To sum up, Wolfe entered into an employment contract with the Board of Regents, a state administrative agency; the contract required that, to terminate Wolfe's employment, administrative proceedings had to occur; those proceedings did occur, resulting in an adjudicative agency decision; the breach of contract and mandamus claims that Wolfe filed in the superior court challenged that agency decision; and the superior court reviewed the agency decision in denying those

---

[5] This Court has also dismissed similar direct appeals in unpublished orders. See *City of Atlanta v. Clarke*, S10A1938 (Sept. 7, 2010) (dismissing the City's direct appeal of a superior court's order reviewing an administrative agency decision regarding the termination of City employees); *Semsar v. Bd. of Regents of Univ. System of Ga. & Martin v. Bd. of Regents of Univ. System of Ga.*, S09A0561, S09A0562 (Jan. 26, 2009) (dismissing direct appeals from the superior court by professors who had asserted breach of contract and other claims challenging the Board of Regents' decisions terminating their contracts). "While these orders were not reported and therefore do not constitute binding precedent, they reflect consistent decisions by this Court when it has actually identified and focused on the jurisdictional issue." *Spurlock v. Dept. of Human Resources*, 286 Ga. 512, 522-523 (690 SE2d 378) (2010) (Nahmias, J., concurring specially). Several Court of Appeals cases not cited by Wolfe, as well as *Laskar*, have retained direct appeals that appear to have challenged the superior court's review of an agency's adjudicative decision regarding an alleged breach of an employee's contract. See *Tackett v. Ga. Dept. of Corrections*, 304 Ga. App. 310 (696 SE2d 359) (2010); *Edmonds v. Bd. of Regents of Univ. System of Ga.*, 302 Ga. App. 1 (689 SE2d 352) (2009); *Employees' Retirement System of Ga. v. Melton*, 294 Ga. App. 634 (669 SE2d 692) (2008); *Baker v. McIntosh County School Dist.*, 264 Ga. App. 509 (591 SE2d 362) (2003). Like the cases Wolfe cites, these opinions do not address the potential applicability of OCGA § 5-6-35 (a) (1), and to the extent they can be read to indicate that a discretionary application to appeal is not required in this situation, those cases are also disapproved.

claims. Accordingly, under OCGA § 5-6-35 (a) (1), Wolfe was required to file a discretionary application to appeal the superior court's decision reviewing the agency decision. He did not do so, and we must therefore dismiss his appeal.

*Appeal dismissed. All the Justices concur.*

DECIDED NOVEMBER 21, 2016.

*Parks, Chesin & Walbert, Andrew Y. Coffman, David A. Weisz*, for appellant.

*Samuel S. Olens, Attorney General, Dennis R. Dunn, Deputy Attorney General, Annette M. Cowart, Senior Assistant Attorney General, Bryan K. Webb, Courtney A. Coons Poole, Assistant Attorneys General*, for appellees.