**THIRD DIVISION
DOYLE, P. J.,
REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**February 7, 2022**

# In the Court of Appeals of Georgia

A21A1387. BLUE CROSS BLUE SHIELD HEALTHCARE PLAN
    OF GEORGIA, INC. et al. v. KIRBY et al.

REESE, Judge.

Blue Cross Blue Shield Healthcare Plan of Georgia, Inc., ("BCBS") appeals from an order of the Cobb County Superior Court denying BCBS's motion to dismiss. For the reasons set forth infra, we affirm.

"We review a trial court's ruling on a motion to dismiss de novo, viewing all allegations in the complaint as true."[1] So viewed, the record shows the following. Frances Kirby, Audrey Logan, Dioli Azofeifa, John David Marks, Wanda Silva, Tonya Beach, and David Frohman (the "Plaintiffs") filed a class-action complaint against BCBS alleging that it made certain misrepresentations as part of a marketing

---

[1] *Laskar v. Bd. of Regents of the Univ. System of Ga.*, 320 Ga. App. 414 (740 SE2d 179) (2013) (citation and punctuation omitted).

scheme. According to the complaint, BCBS offered its Pathway HMO plans during the Affordable Care Act ("ACA") Open Enrollment ("OE") period for the 2019 calendar year. The Plaintiffs alleged that during the 2019 OE period they enrolled with BCBS because Wellstar Health System, Inc. ("Wellstar"), Emory Healthcare, Piedmont Healthcare, and other healthcare providers were inaccurately represented as being in-network for the Pathway plans.

After the Plaintiffs selected a Pathway plan, the ACA OE period ended, and Plaintiffs paid premiums to BCBS, Plaintiffs discovered that providers, including Wellstar, Emory Healthcare, Piedmont Healthcare, and specialists, were not in-network for their selected plans. The complaint also claimed that each Plaintiff entered into an Individual Member Contract with BCBS, which stated, in part, "You do not need a Referral to see a Specialty Care Physician." However, according to the Plaintiffs, BCBS subsequently sent letters dated February 21, 2019, indicating that the Plaintiffs' plans actually did require a referral to see a specialist. Additionally, the Complaint alleged that BCBS sent insurance cards to "some or all" of the Plaintiffs with their primary care physicians listed even though they were not included in the network for their plans.

Plaintiffs filed a class-action complaint on April 12, 2019, alleging several causes of action, but primarily asserting that BCBS had engaged in a health insurance marketing scheme during the ACA 2019 OE period by misrepresenting the size of BCBS's physician and hospital networks, and thereby inducing Plaintiffs to select plans that they otherwise would not have chosen. The Plaintiffs also asserted that BCBS further breached the Plaintiffs' member contracts when BCBS stated that the Plaintiffs had to obtain a referral to see a specialist when their member contracts stated that no such referral was needed. BCBS filed an answer and a motion to dismiss the Plaintiffs' complaint, which the trial court denied. We granted BCBS's application for interlocutory appeal.

A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. The appellate court reviews de novo the trial court's ruling on the defendants' motion to dismiss, accepting

3

as true all well-pled material allegations in the complaint and resolving any doubts in favor of the plaintiff.[2]

With these guiding principles in mind, we now turn to BCBS's claims of error.

1. BCBS argues that the trial court erred by failing to dismiss the Plaintiffs' claims under the filed-rate doctrine. Specifically, BCBS asserts that awarding the damages that they seek would require the trial court to judicially determine the reasonableness of the rate filed with the Georgia Commissioner of Insurance ("Commissioner"), which is prohibited under the filed-rate doctrine.

Georgia courts have seldom addressed the filed-rate doctrine, and none have applied it to a situation involving rates filed with the Commissioner, specifically medical insurance policies.[3] However, the United States Court of Appeals for the Eleventh Circuit has provided some guidance, stating that "[t]he filed-rate doctrine

---

[2] *Williams v. DeKalb County*, 308 Ga. 265, 270 (2) (840 SE2d 423) (2020) (citations and punctuation omitted).

[3] See *Roberts v. Wells Fargo Bank*, 2013 U.S. Dist. LEXIS 44545, at *33 (III) (C) (c) (S.D. Ga. 2013) (noting that of the decisions addressing the filed-rate doctrine, none applied the doctrine to rates filed with the Commissioner).

forbids a regulated entity from charging rates for its services other than those properly filed with the appropriate regulatory authority."[4] According to the Eleventh Circuit,

> [t]wo rationales underlie the doctrine. The first, which is known as the "nondiscrimination principle," is that all rate-payers should be charged the same rate for the regulated entity's service. The second, which is termed the "nonjusticiability principle," is that duly-empowered administrative agencies should have exclusive say over the rates charged by regulated entities because agencies are more competent than the courts at the rate-making process.[5]

As the Eleventh Circuit in *Patel* further stated, the doctrine therefore precludes two types of suits:

> First, and most obviously, direct challenges to a filed rate are barred because, if successful, they necessarily violate the nonjusticiability principle. Second, facially-neutral challenges — i.e., any cause of action that is not worded as a challenge to the rate itself — are barred when an award of damages would, effectively, change the rate paid by the customer-plaintiff to one below the filed rate paid by other customers or would, in effect, result in a judicial determination of the reasonableness of that rate.[6]

---

[4] *Patel v. Specialized Loan Servicing*, 904 F3d 1314, 1321 (III) (A) (11th Cir. 2018) (citation and punctuation omitted).

[5] Id. at 1321-1322 (III) (A) (citation and punctuation omitted).

[6] Id. at 1322 (III) (A) (citation and punctuation omitted).

5

Here, the Plaintiffs' Complaint alleges, inter alia, that BCBS intentionally disseminated misinformation regarding their network, and violated the Plaintiffs' contracts by requiring them to obtain a referral before seeing a specialist. The Plaintiffs do not, however, directly "state they are challenging [BCBS's] premiums."[7] Therefore, the filed-rate doctrine does not bar the Plaintiffs' claims as a direct challenge to the rates approved by the Commissioner.[8]

Next we examine whether the Plaintiffs' Complaint contained a facially-neutral challenge that would indirectly require the trial court's award of damages to change the rate approved by the Commissioner.[9] Although the filed-rate doctrine bars causes of action that "would, effectively, change the rate paid by the customer-plaintiff to one below the filed rate paid by other customers or would, in effect, result in a judicial determination of the reasonableness of that rate[,]"[10] the Plaintiffs' Complaint does not contain such a challenge.

---

[7] *Patel*, 904 F3d at 1326 (III) (C).

[8] See id. at 1322 (III) (A) ("[D]irect challenges to a filed rate are barred because, if successful, they necessarily violate the nonjusticiability principle.").

[9] See *Patel*, 904 F. 3d at 1321 (III) (A).

[10] Id. (citation and punctuation omitted).

The Plaintiffs asserted that BCBS "disseminated uniform deceptive marketing materials to its independent agents that falsely represented that WellStar, Emory, Piedmont and other health care providers were going to be in-network health care providers in its Pathway health insurance plan[s]." The Plaintiffs also claimed that BCBS listed WellStar, Emory and other primary care physicians on "some or all of the Plaintiffs' health insurance cards[.]" Moreover, Plaintiffs also assert that "[i]n violation of its Member Contract, [BCBS] sent letters to Plaintiffs and Class Members" that stated members would need to obtain a referral to see a specialist without obtaining the Plaintiffs' or Class Members' approval and without being signed by BCBS's President.

The Plaintiffs' Complaint neither directly alleges that BCBS's rates were too high, nor requires the trial court to recalculate the rate in order to award the damages sought. Unlike *Patel*, where the plaintiffs "repeatedly state[d] that they [were] challenging [the defendant's] premiums[,]"[11] here the Plaintiffs' allegations did not involve the actual rates charged by BCBS. Rather, the Plaintiffs claimed that BCBS's actions induced them into selecting a plan that they would not have chosen had they

---

[11] Cf. *Patel*, 904 F3d at 1326 (III) (C) (Plaintiffs described themselves as "suffering damages in the form of *unreasonably high* force-placed insurance *premiums*.") (punctuation omitted).

7

known the actual status of their providers in relation to BCBS's network, and that BCBS improperly imposed an additional requirement on them by requiring a referral.[12]

Thus, the Plaintiffs' claims were not barred by the filed-rate doctrine.[13]

2. BCBS also asserts that the trial court erred in denying its motion for dismissal because the filed-rate doctrine applies to insurance rates. However, in light of our ruling in Division 1, supra, we need not reach this argument.

*Judgment affirmed. Doyle, P. J., and Brown, J., concur*.

---

[12] See *Harvey v. Centene Mgmt. Co.*, 357 FSupp.3d 1073, 1083 (A) (1) (E.D. Wash. 2018) (noting that under Washington state law "the filed rate doctrine does not apply to claims that are merely incidental to and do not directly attack Insurance Commissioner-approved health insurance premiums[ ]").

[13] See *Harvey*, 357 FSupp.3d at 1083 (A) (1).

8